■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JERRY D. HUGHES, Appellant.—Mikoll, J.

Defendant and William Chapman were indicted for, *inter alia,* arson in the first degree. It was alleged that on May 10, 1984 at about 9:00 P.M., defendant, with the aid of Chapman, threw a Molotov cocktail through the front window of a Cumberland Farms Store in the Village of Menands, Albany County. Defendant had been in the store earlier that evening and had an argument with an employee, Lisa Horton, who allegedly uttered a racial slur at him.

At the conclusion of a suppression hearing, County Court made the following rulings: there was probable cause for defendant's arrest; defendant's motion to suppress evidence seized from the apartment he shared with Nancy Eaddy should be denied; exigent circumstances authorized the search of a yellow Vega owned by defendant and a green Oldsmobile driven by defendant at the time of his arrest; a tape recording of defendant's telephone call to Patricia Smith from the police station was not admissible as part of the People's direct case, since it was obtained without consent and without an eavesdropping warrant; and statements made by defendant before the telephone call were voluntary and admissible while statements obtained following the telephone call had to be suppressed. County Court further held that the various photographic arrays shown to the witnesses were not unconstitutionally suggestive. After a *Sandoval* hearing, County Court also ruled that the prosecutor could question defendant on convictions for possession of a handgun and for theft of a motorcycle but not for the display of another's driver's license.

At trial, Lisa Horton testified that she was set on fire when a fiery object came through the window and landed on her foot. She told of the argument that had occurred earlier in the day and displayed her scars to the jury. The prosecutor introduced a number of photographs depicting her burns a few days after the accident. These were admitted over defendant's objection. Nancy Eaddy testified that defendant had told her

in a bar on the night of the incident of the argument with Horton, and admitted that it was he who blew up the store.

Defendant took the stand to testify in his own behalf. He testified that he was not able to read the telephone book very well and that Horton, Chris Sally (another store employee) and John Coffey (a manager of another Cumberland Farms Store) laughed at this. He testified that Chapman, who helped him tow the yellow Vega to the City of Albany and who resembled him, left defendant near the store with the gasoline can—implying that it was Chapman who fire-bombed the store.

The People laid a foundation for the impeachment of defendant by use of the illegally obtained tape of the telephone conversation between defendant and Patricia Smith. County Court gave the jury its first instruction concerning how they should consider this rebuttal evidence. Smith testified and the tape was played to the jury. Smith identified her voice and that of defendant on the tape. The court then repeated instructions to the jury concerning the use of the tape as rebuttal evidence.

County Count directed the jury in the charge to confine its consideration to the evidence and told it to consider rebuttal evidence, as opposed to evidence-in-chief, "only on the issue of the credibility of the evidence or the testimony to which it relates". Defendant was found guilty of arson in the first degree and defendant was sentenced to 25 years to life imprisonment. This appeal followed.

Defendant's principal contentions of error shall be discussed seriatim.

Defendant's first assignment of error, that the arresting officers lacked probable cause to arrest him for the fire bombing of the Cumberland Farms Store, must be rejected. The suppression hearing testimony reveals factual information establishing probable cause for his arrest: (1) an argument had occurred a few hours before the arson between Lisa Horton and an unknown black man who made threats; (2) a taxicab driver drove a black man, who was muttering angry words, to 15 Sherman Street in Albany; (3) a black man threw a burning object into the store; (4) verbal descriptions and composite pictures resembled a man who lived at 15 Sherman Street and who owned a yellow Vega similar to the one that had broken down and had been towed away from a service station across from the store; and (5) the yellow Vega, parked in front of 15 Sherman Street, had a grease spot on its hood

indicating that it had been recently towed *(see, People v Dodt, 61 NY2d 408, 415-416)*.

Defendant's next claim, that the police illegally seized items out of his yellow Vega and green Oldsmobile when they searched those cars pursuant to an oral search warrant allegedly obtained in violation of CPL 690.36 and 690.40 (3), is without merit. The People admit the oral search warrant was invalid, since, *inter alia,* the officer failed to fill out a search warrant form and read it to the issuing magistrate *(see, People v Crandall,* 108 AD2d 413). However, the People correctly assert that exigent circumstances justified the search. Defendant, as owner, had access to both cars. The cars were parked on a public street in a populated area and most probably contained a potentially explosive and dangerous device or devices. The police were also entitled to impound the vehicles and make an inventory search of them.

Defendant's contention that County Court improperly denied defendant's motion to suppress potential in-court identification based on the showing of two photographic arrays is rejected. The repeated showing of a picture of a defendant in a number of photographic arrays, which also contain the repeated pictures of other individuals, may be found not to be impermissibly suggestive *(see, People v Francis,* 67 AD2d 686). The two photo arrays used in the case at bar indicate not only that the general physical characteristics of the pictured individuals are well matched, but also that defendant was not the only individual whose picture was repeated. At least one other individual's picture was repeated. Certain other dissimilarities in the two photographs of defendant are discernible. Turning next to the use of the illegal tape recording, it appears that County Court did not err in allowing its use on rebuttal. Defendant's argument that the best evidence was not used when a recording of the original tape was used in place of the original tape is not persuasive. The erasure of the original tape was not a deliberate attempt to destroy evidence. The recordings on the master reel were regularly erased to enable the reel to be used again. There was evidence that the secondary tape recording was an accurate and faithful reproduction of the original tape. There was also a proper foundation laid for the playing of this tape recording to the jury *(see, People v McGee,* 49 NY2d 48, *cert denied sub nom. Waters v New York,* 446 US 942).

Defendant further claims that CPLR 4506 prohibits the use at a trial of an illegally obtained tape recording since the making of the tape violated defendant's constitutional right

against unreasonable search and seizure. This claim is not persuasive. In *People v McGrath* (46 NY2d 12, 21, *cert denied* 440 US 972), the Court of Appeals indicated that application of the exclusionary rule depends upon a "balancing of its probable deterrent effect against its detrimental impact upon the truth-finding process". In *United States v Caron* (474 F2d 506, 509), the court permitted a defendant's impeachment with an illegally taped conversation. The court commented: " '[A defendant] must be free to deny all the elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal evidence illegally secured by it, and therefore not available for its case in chief. Beyond that, however, there is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility' " *(United States v Caron, supra,* p 509, quoting *Walder v United States,* 347 US 62, 65). Applying the foregoing rationale it appears that County Court properly allowed use of the illegal tape to impeach defendant.

Also without merit is defendant's argument that County Court's instructions concerning the use of the illegally obtained tape recording were inadequate to instruct, charge and clearly apprise the jury that the illegal tape recording was not direct evidence but was received only to affect the credibility of defendant. County Court instructed the jury repeatedly and charged the jury concerning use of rebuttal evidence. Defendant did not object to the instructions or to the charge. The charge in these circumstances was adequate.

We have examined defendant's other arguments for reversal and find them unpersuasive. Although defendant received the maximum allowable sentence on his conviction for arson in the first degree, he has failed to demonstrate that County Court abused its discretion *(see, People v Galvin,* 112 AD2d 1090, 1091) or that extraordinary circumstances exist warranting a reduction in the sentence *(see, People v Board,* 97 AD2d 610).

Judgment affirmed. Mahoney, P. J., Main, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.