(February 18, 1988)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM B. CHAPMAN, Appellant.—Casey, J. Appeal from a judgment of the County Court of Albany County (Turner, Jr., J.), rendered March 29, 1985, upon a verdict convicting defendant of the crimes of arson in the first degree and attempted murder in the second degree (two counts).

Defendant's conviction was based on his acting as an accessory (Penal Law § 20.00) in crimes committed by Jerry D. Hughes in the Village of Menands, Albany County. Hughes and defendant were both indicted for arson in the first degree, four counts of attempted murder in the second degree, and reckless endangerment in the first degree. Severance was ordered and, after trial, Hughes was convicted of arson in the first degree, a conviction which was affirmed by this court (People v Hughes, 124 AD2d 344).

The underlying facts reveal that at about 6:00 P.M. on May 20, 1984, Hughes entered a Cumberland Farms store located at the border of Menands and the City of Watervliet to call a cab because the yellow Vega automobile that he had been driving had become disabled at the Agway gas station across the street. Apparently, Hughes, a black man, acted belligerently when he entered the store and claims that a white employee at the store, Lisa Horton, uttered a racial slur against him. Hughes was asked to leave the store, which he did, but he returned to call his employer to say he would not be in to work. Hughes then waited for a cab at the gas station. When it arrived, he took the battery from the Vega with him. During the taxi ride to Albany, the driver heard Hughes state

that he was going to get even with a lady in the store. The driver watched Hughes take the battery to a green Oldsmobile and put it into the car. Hughes then drove the Oldsmobile to defendant's home to obtain defendant's help in towing the Vega back to Albany.

Before leaving, defendant saw Hughes fill two bottles with gasoline and place them in the trunk of the Oldsmobile. Although the prosecution stressed this fact, defendant claims he thought Hughes was going to put gasoline into the Vega's carburetor, as defendant had seen him do before, and this testimony was corroborated. Although defendant testified that Hughes brought a tow chain with him, an automobile mechanic stated that Hughes and defendant had driven to his garage to borrow such a chain, as Hughes had often done before. The mechanic stated that Hughes did not seem unusually upset at the time and did not mention the incident that had occurred earlier in the Cumberland Farms store. Although other testimony established that the Vega had been parked at the Menands Agway gas station, defendant told police that he and Hughes had retrieved it at a Pepsi-Cola plant located less than half a mile down the road from the gas station. Defendant contends that upon reaching the Pepsi-Cola plant, Hughes told him he would be right back, left on foot without further explanation and was gone for about 40 minutes. Defendant states that he drove the Oldsmobile to a nearby store searching for Hughes, drove back to the Vega and, after purchasing cigarettes, walked back to the Vega and heard sirens.

It appears that at about 9:00 P.M., Hughes had thrown a Molotov cocktail, apparently made from the gasoline he had brought, through the front window of the Cumberland Farms store. It landed near Horton, enveloping her in flames and severely injuring her. Jean Halpin, a customer, helped Horton out shortly before the front of the building exploded. Hughes returned to the disabled Vega and defendant towed it with the Oldsmobile to Albany. Hughes then asked defendant if he had heard sirens while in Menands and told defendant that the sirens were because of him.

After his conviction of arson in the first degree and two counts of attempted murder in the second degree, defendant was sentenced to concurrent terms of imprisonment of 25 years to life for the arson conviction and 8⅓ to 25 years for each of the attempted murder convictions.

On this appeal, defendant urges principally the legal insufficiency of the evidence to support his conviction as an accom-

plice of Hughes in the commission of the crimes. Penal Law § 20.00 provides in relevant part that: "When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he * * * intentionally aids such person to engage in such conduct." The evidence as to defendant's intent is entirely circumstantial. Therefore, to be legally sufficient, the facts from which the inference of defendant's guilt is drawn "must be inconsistent with the defendant's innocence and must exclude to a moral certainty every other reasonable hypothesis" (People v Marin, 65 NY2d 741, 742). If consistent with either innocence or guilt, circumstantial evidence is of no value (People v Piazza, 48 NY2d 151). Even viewing the evidence in a light most favorable to the prosecution, as we must (see, People v Marin, supra), the evidence herein fails the test for legal sufficiency.

The prosecution would have us find that defendant must have known that the gasoline Hughes placed in the bottles and took with them was to be used as a Molotov cocktail. The explanation by defendant, corroborated by another witness, is as consistent with the fact that the gasoline was to be used to prime the carburetor of the disabled Vega. The prosecution would have us believe that bringing gasoline and a tow chain demonstrated that the crime was intended; that the Vega was towed from the Agway station to the Pepsi-Cola plant because it would not be so visible there when Hughes fled the store; and that it was highly unlikely that defendant did not know when Hughes left him and the cars that Hughes was going to throw the firebomb into the Cumberland Farms store. However, it is uncontroverted that defendant had no demonstrated motive to be angry at a store employee, as did Hughes. No fruits of any crime were shared by defendant or in his possession, and no proof was adduced that Hughes ever told defendant of his intentions. Therefore, even if defendant aided Hughes in the commission of the crimes, there is no showing that he did so with the specific intent to participate in or benefit from the crimes. Bringing both the gasoline and the tow chain is as consistent with an innocent intent to aid Hughes in retrieving his disabled vehicle as it is with an intent to aid him in the commission of a crime. Lacking a showing of the mental culpability needed to be found an accomplice, defendant cannot be so found. Even if defendant's participation demonstrated criminal facilitation (see, People v Howard, 75 AD2d 1007, 1008), he could not be found guilty of

that crime since it was not charged against him and is not a lesser included offense.

This decision renders defendant's other arguments academic.

Judgment reversed, on the law, and indictment dismissed. Mahoney, P. J., Casey, Weiss and Yesawich, Jr., JJ., concur.