■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWARD VAN STEENBURG, Appellant. [633 NYS2d 867] —Peters, J. Appeals (1) from a judgment of the County Court of Sullivan County (Kane, J.), rendered August 11, 1993, upon a verdict convicting defendant of the crimes of kidnapping in the second degree, burglary in the first degree (two counts), rape in the first degree, sodomy in the first degree, criminal use of a firearm in the first degree (two counts), criminal possession of a weapon in the second degree, sexual abuse in the first degree and escape in the first degree, and (2) by permission, from an

order of said court, entered August 29, 1994, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.

On October 3, 1992, defendant and the victim, legally separated from each other for over one year, met by prearrangement so that defendant could accompany the victim to Sullivan County to get her car wheels aligned. Defendant entered the victim's car, placed a jacket and wrench in the back seat and directed her to drive onto Shin Creek Road in the Town of Rockland, Sullivan County. He then reached into the back seat and pulled out a sawed-off rifle, loaded it and ordered her to keep driving. The paved road she was driving on eventually changed to a deserted dirt road, running through the woods. He directed her to drive until they reached a cabin, which he thereafter burglarized. He then ordered her to enter the cabin, go through a trap door leading to the cellar and, once inside, yelled and screamed at her and said, "Well, I told you you were going to get this before it was all over with." He thereafter proceeded to sexually abuse her, sodomize her and finally rape her. Defendant then made her hug him and directed that they both get dressed. Again, at gunpoint, he directed her to drive to the Village of Monticello, where they went to Alignment World to get her wheels aligned. Thereafter, he directed her to stop at a drive-thru of a McDonald's for a soda and, on the way back to their original location, asked her to move back in with him. She agreed, watched him exit the car and assured him, upon his inquiry, that she was not going to call the police.

The victim promptly reported the incident to the State Police, underwent a physical examination at a hospital, gave samples for a rape kit and then led the police to the cabin where the incidents took place. At about 11:45 P.M. on that night, the police approached defendant for questioning. After securing his truck, defendant voluntarily accompanied the State Police to their barracks in the Village of Liberty. He was then read his *Miranda* warnings and questioned. He gave an oral statement similar to that of the victim, yet omitted the events at the cabin and denied that any intercourse took place. Pursuant to an order by a senior investigator, defendant was placed under arrest and brought to a holding pen. After being granted permission to use the bathroom, on the way back therefrom he escaped from the police barracks by diving head first through an open second story window. He was apprehended the following day at approximately 3:10 P.M.

At the time of his escape, the State Police were in the pro-

cess of completing paperwork to obtain a search warrant for defendant's truck. After the escape, an investigator ordered the truck impounded. During the process thereof and in seeking to disengage the clutch after being asked for assistance by the tow operator, Investigator Lawrence Jonigan sat on a loaded firearm partially hidden under a jacket. He then found a loaded clip on the seat.

After apprehension, defendant was charged, in a 10-count indictment, with the crimes for which he was subsequently convicted. A suppression hearing was held, as well as a *Sandoval* hearing. A jury convicted defendant on all counts. He was then sentenced as a second felony offender. Defendant appealed and unsuccessfully moved pursuant to CPL 440.10 to vacate the judgment. Both appeals are presently before this Court.

Defendant urges a reversal of the convictions as being against the weight of the evidence. He contests the warrantless search of his vehicle and asserts that the kidnapping conviction merged with the rape, sodomy and burglary convictions. Defendant further challenges the manner of his arrest and states that due to the impropriety thereof, he could not be convicted of escape. Finally, he alleges prosecutorial misconduct and various other errors by the court.

Where a different verdict would not have been unreasonable, we must " 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " (*People v Bleakley*, 69 NY2d 490, 495, quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 62) and if we find that the trier of fact has weighed the evidence improperly, we may set aside the verdict (*see*, CPL 470.20 [5]). According appropriate deference to the jury's opportunity to view witnesses, hear testimony and observe demeanor, we find no basis upon which to disturb the verdict.

Defendant's challenge to the warrantless search of the vehicle is without merit. Jonigan was confronted with a defendant who had escaped from custody and correctly perceived a necessity to take police action without delay. Viewing the police action under these circumstances, we find the officer's conduct to fully comply with the guidelines set forth by the Court of Appeals for application of the emergency doctrine (*see*, *People v Mitchell*, 39 NY2d 173, 177-178, *cert denied* 426 US 953) and that, with the requirement for a warrant appropriately excused, all evidence seized as a result thereof was properly admitted (*see*, *People v Clements*, 37 NY2d 675, 680, *cert denied sub nom. Metzger v New York*, 425 US 911; *People v Robinson*, 205 AD2d 836, *lv denied* 84 NY2d 831; *People v Hughes*, 124 AD2d 344, *lv denied* 69 NY2d 828).

As to the merger of the kidnapping charge with the rape, sodomy and burglary charges, we note that "[t]he merger doctrine was of judicial origin and was based on an aversion to prosecuting a defendant on a kidnapping charge in order to expose him to the heavier penalty thereby made available, where the period of abduction was brief, the criminal enterprise * * * appeared as no more than an offense of robbery or rape, and there was lacking a genuine 'kidnapping' flavor" (*People v Cassidy*, 40 NY2d 763, 765-766). Applying this criteria to the facts before us, we have no difficulty in concluding that the lengthy abduction, use of a deadly weapon, and the transport of the victim to secluded areas was exactly the conduct which the Legislature intended to proscribe in enacting the kidnapping statute (*see, People v Gonzalez*, 80 NY2d 146; *People v D'Angelo*, 166 AD2d 662, *lv denied* 77 NY2d 876; *People v Wilsey*, 99 AD2d 877).

We further find that there was reasonable cause to believe that defendant committed the rape since the officer who arrested defendant was aware of the victim's allegations and that the victim had identified her husband, defendant, as the perpetrator of the crimes. While defendant contests the existence of a valid arrest at the time he fled, the record belies this contention (*see, Smith v County of Nassau*, 34 NY2d 18).

As to all other contentions raised, we find them without merit.

Mikoll, J. P., Crew III, Yesawich Jr. and Spain, JJ., concur. Ordered that the judgment and order are affirmed.