■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VICTOR V. HERNANDEZ PEREZ, Also Known as VLADIMIR V. PEREZ, Also Known as HERNANDEZ PEREZ, Appellant. [942 NYS2d 227]—

Garry, J. Appeal from a judgment of the County Court of Saratoga County (Scarano, J.), rendered July 6, 2010, (1) upon a verdict convicting defendant of the crimes of kidnapping in the second degree, robbery in the first degree, robbery in the second degree (two counts), assault in the second degree, sexually motivated felony (five counts), assault in the third degree and criminal possession of a weapon in the fourth degree (two counts), and (2) convicting defendant upon his plea of guilty of the crime of criminal possession of a forged instrument in the second degree.

On an evening in July 2009, the victim was walking along a street in the City of Saratoga Springs, Saratoga County when defendant allegedly struck her on the head and knocked her to the ground, causing her to drop her purse and cell phone. Defendant put the victim and her belongings into his waiting minivan and drove north out of the city. As he drove, he pointed

---

8. We decline to review the jurors' notes (*see* 22 NYCRR 220.10 [e]).

what appeared to be a handgun at the victim, repeatedly told her that he intended to rape and kill her, and demanded that she remove all of her clothing, which she did. When the van had traveled approximately 10 miles, the victim moved quickly to the front passenger door, opened it, and jumped out of the minivan while it was still moving. As the victim fled, defendant pointed the gun in her direction and she heard popping sounds which she believed were gunshots. The victim ran to a nearby house, where the police were called. Three days later, police officers apprehended defendant after stopping a vehicle that matched a description given by witnesses who had seen the victim leaping out of the minivan. A .177 caliber BB pistol and personal items belonging to the victim were recovered from the minivan; other possessions of the victim were found on defendant's person and in a trash can outside his residence.

Defendant was indicted on one count of kidnapping in the second degree, one count of robbery in the first degree, two counts of robbery in the second degree, two counts of assault in the second degree, six counts of sexually motivated felony, and two counts of criminal possession of a weapon in the fourth degree.[1] Following a jury trial, he was acquitted of one charge of assault in the second degree and the corresponding sexually motivated felony charge. He was convicted of assault in the third degree, as a lesser included offense, and the remaining charges. County Court sentenced him to an aggregate prison term of 25 years, to be followed by 10 years of postrelease supervision. Defendant appeals.

Initially, defendant contends that his conviction of kidnapping in the second degree was improper because it merged with the robbery convictions and the uncharged crime of attempted rape. Under the merger doctrine, a defendant may not be convicted of kidnapping and of other crimes "if the restraint imposed was simply a minimal intrusion necessary and integral to the other crimes . . . and was simultaneous or inseparable from [them]" (*People v Kruppenbacher*, 81 AD3d 1169, 1170-1171 [2011], *lv denied* 17 NY3d 797 [2011] [internal quotation marks, brackets and citation omitted]). The purpose of the doctrine is to preclude kidnapping convictions for actions which are " 'so much the part of another substantive crime that the substantive crime could not have been committed without such acts and that independent criminal responsibility may not fairly be attributed to

---

1. The indictment also charged defendant with one count of criminal possession of a forged instrument in the second degree. This count was severed; defendant later pleaded guilty and was sentenced to a prison term running concurrently with his other sentences.

them' " (*People v Gonzalez*, 80 NY2d 146, 153 [1992], quoting *People v Cassidy*, 40 NY2d 763, 767 [1976]; *accord People v Passino*, 25 AD3d 817, 818 [2006], *lv denied* 6 NY3d 816 [2006]). Applying these principles, the kidnapping charge could not merge with attempted rape, as defendant was not charged with that crime (*see People v Cruz*, 296 AD2d 22, 26-27 [2002], *lv denied* 99 NY2d 534 [2002]; *People v Grey*, 224 AD2d 318, 318 [1996], *lv denied* 88 NY2d 985 [1996]; *see also People v Poladian*, 189 AD2d 911, 912 [1993], *lv denied* 81 NY2d 891 [1993]). As for the robbery convictions, the testimony established that defendant forcibly placed the victim in the minivan, locked the door closest to her, refused her pleas to let her go, threatened her with what appeared to be a deadly weapon, and compelled her to remove her clothing while he transported her approximately 10 miles to a rural, secluded area. As these actions are "exactly the conduct which the Legislature intended to proscribe in enacting the kidnapping statute," the merger doctrine does not apply (*People v Van Steenburg*, 221 AD2d 799, 802 [1995], *lv denied* 87 NY2d 978 [1996]; *see People v Kruppenbacher*, 81 AD3d at 1170-1171; *People v Passino*, 25 AD3d at 818; *People v May*, 263 AD2d 215, 220 [2000], *lv denied* 94 NY2d 950 [2000]; *compare People v Swansbrough*, 22 AD3d 877, 878 [2005]).

Next, we reject defendant's contention that County Court should have granted his motion to dismiss the indictment on the ground that it failed to provide sufficient factual specificity to apprise him of the accusations against him (*see* CPL 200.50 [7] [a]). As a general rule, an indictment is sufficient where the charges use the language of the statutes involved, unless that language is too broad (*see People v Iannone*, 45 NY2d 589, 599 [1978]; *People ex rel. Best v Senkowski*, 200 AD2d 808, 809 [1994], *appeal dismissed* 83 NY2d 951 [1994]; *People v Laporte*, 184 AD2d 803, 804 [1992], *lv denied* 80 NY2d 905 [1992]). Here, the indictment used the statutory language and provided additional information as to the location, date and time of the offenses, thus alleging "where, when and what" defendant purportedly did (*People v Iannone*, 45 NY2d at 598 [internal quotation marks and citation omitted]). Further, the bill of particulars amplified the indictment by supplying additional factual details, including the nature of the dangerous implement that defendant was alleged to have used and the facts underlying the claim that some of the offenses were sexually motivated (*see* CPL 200.50 [7] [a], [b], [e]; *People v Thompson*, 27 AD3d 888, 889-890 [2006], *lv denied* 6 NY3d 853 [2006]; *People v Smith*, 7 AD3d 917, 918 [2004], *lv denied* 3 NY3d 681 [2004]). Accordingly, the People met their obligation to provide

defendant with sufficient notice of the accusations against him to enable him to prepare a defense (*see Matter of Taub v Altman*, 3 NY3d 30, 40 [2004]).

Defendant next contends that his convictions for robbery in the first degree and the corresponding sexually motivated felony were unsupported by legally sufficient evidence and were against the weight of the evidence. We disagree. Upon a challenge to the legal sufficiency of the evidence, "[this C]ourt must determine whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial" (*People v Bleakley*, 69 NY2d 490, 495 [1987]; *see People v Contes*, 60 NY2d 620, 621 [1983]). Defendant contends that the People failed to prove that the BB gun was loaded and operable or otherwise "readily capable of causing death or other serious physical injury" (Penal Law § 10.00 [13]; *see People v Swain*, 46 AD3d 1157, 1158 [2007]), and thus did not demonstrate that it was a "dangerous instrument" (Penal Law § 160.15 [3]). As defendant notes, there was no evidence that police tested the BB gun to determine whether it was loaded or operable. However, the victim testified that when she fled, she saw defendant point the gun and heard the "pops of a gun," which she believed were gunshots that just missed her. She further testified that defendant held the gun on her and threatened to shoot her while she was in close proximity to him in the minivan. A police investigator testified that the BB gun was capable of causing serious physical injury or death if shot at close range at a person's eye or temple, or if used as a bludgeon. Viewed in the light most favorable to the People (*see People v Contes*, 60 NY2d at 621), this testimony was sufficient to permit a rational finder of fact to conclude that defendant "[u]se[d] or threaten[ed] the immediate use of a dangerous instrument" (Penal Law § 160.15 [3]; *see People v Swain*, 46 AD3d at 1158; *compare People v Wasson*, 266 AD2d 701, 702 [1999]; *People v Espinoza*, 253 AD2d 983, 983 [1998]).

Contrary to defendant's claim, there was legally sufficient proof of his intent to steal (*see* Penal Law § 160.15 [3]; § 155.00 [3]; § 155.05 [1]). Despite the victim's testimony that defendant said he intended to rape and murder her, told her that he did not want her property, and refused her offers to give her possessions to him, her testimony also established that after defendant struck her, he retrieved her purse and cell phone from the sidewalk, put them in his vehicle, and refused to return the phone to her when she asked for it. Further, upon her escape, the victim was forced to leave her possessions behind, including

her clothing, camera, keys, a remote car starter, her purse, and a wallet containing about $500 in cash. When the wallet was subsequently found in defendant's trash can, it was empty; upon his arrest, defendant was carrying a large sum of cash, and additional cash was found in his apartment. The victim's phone and camera were never found, but her driver's license, the camera memory card, and the remote car starter were found on defendant's person, and many of the remaining items were discovered in his trash can. Thus, the conviction for robbery in the first degree is supported by a "valid line of reasoning and permissible inferences" leading to the rational conclusion that defendant intended to deprive the victim of her property or to dispose of it in such a way that she would never recover it (*People v Bleakley*, 69 NY2d at 495; *see* Penal Law § 155.00 [3]; *People v Brooks*, 79 NY2d 1043, 1045 [1992], *cert denied* 506 US 899 [1992]; *compare People v Mateo*, 13 AD3d 987, 987-988 [2004], *lv denied* 5 NY3d 883 [2005]). As to the weight of the evidence, after granting due deference to the jury's credibility determinations, "we find no basis upon which to determine that the jury failed to give the evidence the weight it should be accorded" (*People v Carter*, 74 AD3d 1375, 1377 [2010], *lv denied* 15 NY3d 772 [2010] [internal quotation marks and citation omitted]; *see People v Romero*, 7 NY3d 633, 643-644 [2006]).

Turning to the two convictions of robbery in the second degree, the same reasoning applies to defeat defendant's challenge to the weight and sufficiency of the evidence of larcenous intent (*see* Penal Law § 160.10 [2] [a], [b]; *People v Curry*, 85 AD3d 1209, 1210 [2011], *lv denied* 17 NY3d 815 [2011]). Defendant further challenges his conviction on the charge pursuant to Penal Law § 160.10 (2) (a) on the ground that there was insufficient evidence of causation, arguing that the People theorized that he caused the victim's head injury by striking her with the BB gun, while the victim testified that she did not know what implement he used. However, Penal Law § 160.10 (2) (a) requires merely that a defendant "[c]ause[ ] physical injury to" a person, and does not impose additional requirements as to the instrumentality. Defendant told police that he struck the victim with his fist, while the victim testified that he struck her with an unknown object that was too hard to be a fist. She testified that the blow caused a bump, cut and bruising on her head. She further testified that she sustained abrasions and cuts on her back, legs and feet when she leapt from the minivan and fled barefoot through the woods, and that her right leg in particular was "all cut up." She was treated at a hospital and by her family physician for these injuries, and she testified that she suffered nausea from the blow on her head, pain and

severe headaches that lasted for approximately a week. This evidence was legally sufficient to establish that defendant caused physical injury to the victim (*see* Penal Law § 10.00 [9]; *People v Greene*, 70 NY2d 860, 862-863 [1987]; *People v Douglas*, 26 AD3d 522, 523 [2006], *lv denied* 7 NY3d 847 [2006]). Finally, upon our independent review, we further find that both convictions for robbery in the second degree were not against the weight of the evidence (*see People v Romero*, 7 NY3d at 643-644; *People v Murphy*, 66 AD3d 1234, 1236 [2009]).

Defendant next contends that all of the convictions in which the use or threatened use of a dangerous instrument was an element must be reversed because County Court erred in instructing the jury as to the definition. During its deliberations, the jury sent a note asking whether "a fist [is] considered a 'dangerous instrument.' " The court denied defendant's request to instruct the jury that a fist is not a dangerous instrument and instead read the jury the statutory definition, excluding the reference to a "vehicle" (*see* Penal Law § 10.00 [13]), and told the jurors that it was "up to [them] to decide whether or not under that definition a fist would be considered to be a 'dangerous instrument.' " As the People concede, this was error; a bare body part, without more, does not fall within the statutory definition of a dangerous instrument (*see People v Owusu*, 93 NY2d 398, 402 [1999]). However, we find that the error was harmless. The jury acquitted defendant of the charge of assault in the second degree pursuant to Penal Law § 120.05 (2), which requires the use of "a deadly weapon or a dangerous instrument" to cause physical injury and was premised on the People's theory that he struck the victim in the head with the BB gun. Defendant was instead convicted of the lesser included offense of assault in the third degree, which does not require the use of a dangerous instrument (*see* Penal Law § 120.00 [1]). Given the victim's testimony that she did not know what defendant struck her with and defendant's claim that he used his fist, the acquittal indicates that the jury correctly determined that a fist is not a "dangerous instrument" despite the erroneous instruction, and found that the People did not prove beyond a reasonable doubt that defendant used anything but his fist. Defendant's other convictions involving dangerous instruments or dangerous weapons (*see* Penal Law § 160.15 [3]; § 265.01 [2], [5]) were premised on his use, threatened use or possession of the BB gun rather than his fist and, given the overwhelming evidence supporting these convictions, there is no significant probability that he would have been acquitted if not for the erroneous instruction (*see People v Crimmins*, 36 NY2d 230, 242 [1975]; *People v Jones*, 70 AD3d 1253, 1255-1256 [2010]).

For similar reasons, we reject defendant's contention that his acquittal on the charge of assault in the second degree is repugnant to the other convictions. A verdict is repugnant if the defendant has been convicted of a crime " 'on which the jury has actually found that the defendant did not commit an essential element' " (*People v Coville*, 73 AD3d 1232, 1232 [2010], quoting *People v Tucker*, 55 NY2d 1, 6 [1981]). Based on the elements of the various offenses as charged (*see People v Onyia*, 70 AD3d 1202, 1203 [2010]), the jury could have concluded that the People did not prove that defendant used a dangerous instrument to cause physical injury to the victim as required to convict him of assault in the second degree, but that he nonetheless caused physical injury to her as required for assault in the third degree, and that his use, threatened use or possession of the BB gun was proven to the extent required by the other offenses. "Where, as here, a rational theory exists to support each verdict, the jury's determination will not be disturbed" (*People v Long*, 291 AD2d 720, 723 [2002], *lv denied* 98 NY2d 677 [2002] [citation omitted]).

Defendant next challenges the legal sufficiency and weight of the evidence supporting his convictions for two counts of criminal possession of a weapon in the fourth degree, contending that the People failed to prove that the BB gun was an "imitation pistol, or any other dangerous or deadly instrument or weapon" (Penal Law § 265.01 [2]) or a "dangerous or deadly weapon" (Penal Law § 265.01 [5]). The legal sufficiency challenge was not specifically raised at trial and is therefore unpreserved for appellate review (*see People v Carncross*, 14 NY3d 319, 324-325 [2010]). "However, we necessarily review the evidence adduced as to each of the elements of the crimes in the context of our review of defendant's challenge regarding the weight of the evidence" (*People v Caston*, 60 AD3d 1147, 1148-1149 [2009] [citations omitted]; *see People v Danielson*, 9 NY3d 342, 349-350 [2007]). Given the previously discussed evidence that the BB gun was dangerous and that defendant carried it through most of the incident, pointed it at the victim and shot it at her when she fled, we find that the jury's verdict on these charges is fully supported by the weight of the credible evidence (*see People v Romero*, 7 NY3d at 643-644; *People v Gilliam*, 36 AD3d 1151, 1152-1153 [2007], *lv denied* 8 NY3d 946 [2007]).[2]

Defendant next contends that his conviction for criminal possession of a weapon in the fourth degree pursuant to Penal Law

---

2. We note that a BB gun has been found to be an "imitation pistol" within the meaning of Penal Law § 265.01 (2) (*see People v Wilson*, 283 AD2d 339, 340 [2001], *lv denied* 97 NY2d 644 [2001]).

§ 265.01 (5) must be reversed on the ground that the statute violates the Equal Protection Clause of the 14th Amendment to the US Constitution by discriminating against him on the basis of alienage. However, defendant failed to provide the requisite notice of this challenge to the Attorney General (*see* CPLR 1012 [b] [1], [3]; Executive Law § 71 [1], [3]; *People v Woodard*, 83 AD3d 1440, 1442 [2011], *lv denied* 17 NY3d 803 [2011]). He further failed to preserve the issue for our review by raising it before County Court, and we decline to exercise our interest of justice jurisdiction (*see People v Schaurer*, 32 AD3d 1241 [2006]; *People v Evans*, 27 AD3d 905, 906 [2006], *lv denied* 6 NY3d 847 [2006]).

The parties' remaining contentions have been considered and found to be without merit, but the judgment must be modified on a ground that was unaddressed. When a defendant is convicted of inclusory concurrent counts, "[the] verdict of guilty upon the greatest count submitted is deemed a dismissal of every lesser count submitted" (CPL 300.40 [3] [b]; *see* 300.30 [4]; *People v Cordato*, 85 AD3d 1304, 1307 [2011], *lv denied* 17 NY3d 815 [2011]). Defendant was convicted of assault in the second degree under Penal Law § 120.05 (6), which is an inclusory concurrent count of robbery in the second degree under Penal Law § 160.10 (2) (a) (*see People v Mitchell*, 59 AD3d 739, 741 [2009], *lv denied* 12 NY3d 918 [2009]; *People v Lucas*, 291 AD2d 890, 890 [2002]). Likewise, defendant's convictions for kidnapping in the second degree, robbery in the first degree, two counts of robbery in the second degree and assault in the second degree are inclusory concurrent counts of the corresponding convictions for sexually motivated felony (*see People v Judware*, 75 AD3d 841, 845-846 [2010], *lv denied* 15 NY3d 853 [2010]). Thus, the conviction for assault in the second degree under Penal Law § 120.05 (6), the corresponding sexually motivated felony, and the convictions for kidnapping in the second degree, robbery in the first degree, and two counts of robbery in the second degree must be reversed and these counts of the indictment dismissed (*see People v Horton*, 46 AD3d 1225, 1227-1228 [2007], *lv denied* 10 NY3d 766 [2008]; *see also People v Cordato*, 85 AD3d at 1307; *People v Beauharnois*, 64 AD3d 996, 1000 n 1 [2009], *lv denied* 13 NY3d 834 [2009]).

Peters, J.P., Rose, Lahtinen and Kavanagh, JJ., concur. Ordered that the judgment is modified, as a matter of discretion in the interest of justice, by reversing defendant's convictions of kidnapping in the second degree, robbery in the first degree, two counts of robbery in the second degree, and two counts of assault in the second degree under counts 1, 3, 5, 7, 11 and 12

of the indictment; said counts dismissed and the sentences imposed thereon vacated; and, as so modified, affirmed.

