◾ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v THEODORE PEPPER, Appellant. — Appeal from a judgment of the County Court of Albany County (Clyne, J.), rendered February 4, 1982, upon a verdict convicting defendant of two counts each of the crimes of sodomy in the second degree and sexual abuse in the second degree. The indictment in the instant case charged defendant with three counts of sodomy in the second degree and two counts of sexual abuse in the second degree, all involving an 11-year-old female child and occurring during the months of June through September, 1977. After an unsuccessful motion for change of venue, on the basis of prejudicial pretrial publicity, and a suppression hearing and various other pretrial motions before the County Court, defendant pleaded guilty to a single count of sodomy in the second degree in full satisfaction of the indictment. He was sentenced to an indeterminate term not to exceed seven years. On appeal from this conviction, however, we reversed, holding that a statement given to the State Police should have been suppressed, and remanded the case to the County Court for trial (*People v Pepper,* 76 AD2d 1006, affd 53 NY2d 213). Upon that trial, defendant was found guilty of two counts of sodomy in the second degree and two counts of sexual abuse in the second degree, and was sentenced to consecutive terms of 2⅓ to 7 years on the sodomy convictions and to one-year concurrent terms on the sexual abuse convictions. This appeal ensued. Defendant's first major argument for reversal is that he was denied his constitutional right to a fair trial by an impartial jury by reason of the extensive pretrial publicity concerning the case (including news media coverage of his prior guilty plea and reversal of his conviction on appeal) and by the manner in which the trial court conducted the jury selection process. Regarding pretrial publicity, undeniably because of defendant's prominence as a major automobile dealer in the area and the sordid nature of the crimes he stood accused of committing, the case initially received wide exposure in the print and broadcast media. Nevertheless, as defendant's exhibits show, interest in the case waned after defendant's guilty plea and was only intermittently revived when later events occurred in the course of the appellate process. The intensity and frequency of news coverage clearly abated by the time the case was reached for trial. The Supreme Court has held that extensive knowledge in the community of the crime and of the accused is not sufficient by itself to establish that a trial

is unfair (*Dobbert v Florida,* 432 US 282, 303). Viewing the totality of the circumstances, including the general atmosphere of the community, the conduct of jury selection, and the trial in general, defendant has failed to establish that he did not receive a fair trial. Clearly, this is not a case where the conviction had been "obtained in a trial atmosphere that had been utterly corrupted by press coverage" (*Murphy v Florida,* 421 US 794, 798). As in *Murphy,* only roughly one quarter of the jury panel had to be excused for having preconceived opinions of defendant's guilt. No significant difficulty was encountered in selecting a jury whose members either had never previously considered the merits of the case or who swore that whatever they previously knew or believed about the facts, they could be impartial and judge the case solely on the evidence produced at the trial. The trial court took appropriate measures to safeguard the integrity of the trial and to insulate prospective jurors from possible prejudice by conducting individual *voir dire* examinations *in camera,* and by posing questions to potential jurors during the examinations which skirted potentially prejudicial facts which the jurors might not otherwise have known. Also persuasive that the more contemporaneous publicity concerning the case was not prejudicial is that defendant did not choose to renew his prior motion for a change of venue after his original conviction was reversed. We likewise hold that no prejudicial error occurred in the jury selection process itself. Defendant contends that the court's questions to several prospective jurors were leading and suggestive so as to preclude their honest expression of possible bias. A reading of the entire *voir dire* examinations of these jurors reveals, however, that the questions objected to were preceded by appropriately formed questions by counsel and the court, probative of whether they could render an impartial verdict based solely on the evidence, unaffected by any prior knowledge or belief concerning the case. In context, these questions were more a means to terminate or curtail further examination, or to summarize the juror's prior answers, than to dictate responses. The trial court in a criminal case is vested with broad discretion to control and restrict the scope of *voir dire* examination of jurors and to prevent unduly long jury selection (*People v Boulware,* 29 NY2d 135, 140-143, cert den 405 US 995). It may also restrict repetitive or irrelevant questioning by counsel (*People v Corbett,* 68 AD2d 772, 778-779, affd 52 NY2d 714). All in all, defendant was given a fair opportunity to explore the states of mind of the jurors for possible prejudice (*People v Boulware, supra,* p 140). It is noteworthy that defendant chose to challenge for cause only one of the several jurors to whom the objected-to questions were addressed. As to that juror, her responses during the *voir dire* examination sustained the court's denial of defendant's challenge. It was likewise within the court's discretion to deny because of tardiness defendant's request for additional peremptory challenges, interposed well into the jury selection process and after the prosecution had already accepted several jurors. It was improper for the County Court to refuse to permit the defense to challenge one of four jurors in the box outside their hearing (CPL 270.15, subd 2), but since there was no basis for exercising a challenge as to those jurors, the error could not adversely have affected the verdict (*People v Crimmins,* 36 NY2d 230). Concerning the conduct of the trial itself and the verdict, the only assignments of error meriting consideration relate to the adequacy of the instructions to the jury concerning corroboration and the sufficiency of the corroborative evidence to sustain the convictions. Defendant contends that the charge to the jury was inadequate in two respects, namely, in failing to marshal the evidence and explain its relationship to the law of corroboration (CPL 300.10, subd 2), and in failing to charge that Mary Angus, the child's mother, was an accomplice of defendant and as such her

testimony was required to be corroborated (CPL 60.22). The first of these points is clearly without merit. The court correctly stated and explained the law with respect to corroboration of the victim's testimony in a sex offense case (Penal Law, § 130.16). It further indicated that the jury was to look to the testimony of Mary Angus to determine whether there was sufficient corroboration. Angus' testimony was painstakenly analyzed in both summations. The degree to which a trial court is required to marshal the evidence is dependent upon the complexities of the case and the consequent necessity to explain to the jury the application of the law to the facts (*People v Culhane,* 45 NY2d 757, cert den 439 US 1047; *People v Odell,* 230 NY 481). The presentation of evidence consumed only two days of trial. That the jury understood the significance of Angus' testimony on this issue is demonstrated by its request to have her testimony read back. Nor was any prejudicial error committed by the court's denial of defendant's request that it charge the accomplice corroboration rule regarding Angus' testimony to the effect that the jury could not convict defendant on the testimony of Angus without other evidence tending to connect defendant with the crime (CPL 60.22). Concededly, Angus was an accomplice, as a matter of law, and was named as such in the indictment.[*] But the prosecution's entire case was built to stand or fall, not upon her testimony, but on the testimony of the victim, and the District Attorney said as much in his summation. It is thus inconceivable that the jury could have voted to convict defendant based upon Angus' testimony (which disclaimed observing the actual commission of the offenses), while at the same time substantially rejecting the child's testimony. Charging the accomplice corrobration rule with respect to Angus' testimony would thus have added nothing to what was already self-evident — that acquittal was required if the jury rejected the victim's story. As the court noted, to have added another corroboration rule to the charge would have served no useful function and risked confusing the jury. Therefore, the error, if any, cannot be considered to have affected the verdict (*People v Swersky,* 216 NY 471, 479-480; see, also, *People v Crimmins,* 36 NY2d 230, *supra*). There is likewise no basis for reversing the convictions because of insufficient corroboration of the victim's testimony. In a sex offense case such as this, where the lack of consent element of the crime is established solely through the incapacity of the victim to consent by reason of age, the testimony of the victim is insufficient to sustain a conviction without other evidence tending to establish that an attempt was made to engage in the sexual acts charged, and tending also to connect the defendant with the offense (Penal Law, § 130.16). The child testified to three incidents when, pursuant to prior arrangements made via telephone, meetings took place between her, defendant and her mother at locations in the County of Albany and the acts of sodomy and sexual abuse occurred. The first of these meetings took place at the parking lot of the A&P market in Colonie. After discussing sex and engaging in some sexual touching, defendant asked her to perform fellatio. After she complied, defendant paid her mother between $400 and $600. The second meeting was in the parking lot of the GEX store. Defendant gave her mother $200, and she again performed fellatio at his request. The third was at an unspecified parking lot located somewhere in Albany County, when the same conduct was engaged in after defendant gave the mother between $400 and $600. This last offense was covered in the third count of the indictment, but was not submitted to the jury for lack of corroboration. The sole corroborating evidence as to the first two counts was the testimony of the child's mother.

---

[*] To the extent that both accomplice and sex victim corroboration were required here, the cross-corroboration rule applied, and it was, therefore, permissible for the testimony of Angus and her daughter each to corroborate the other (*People v Coleman,* 42 NY2d 500, 506).

Angus confirmed the child's testimony on the prearranged meetings with defendant at the A&P and GEX parking lots, the physical presence of defendant in the automobiles on the occasions when her daughter said the acts occurred, and the discussions of sexual matters between them. This testimony was amply sufficient corroborative evidence tending to connect this particular defendant with the offenses (see *People v Masse,* 5 NY2d 217; *People v Bravender,* 35 AD2d 1035). Regarding the second corroboration requirement of evidence tending to establish an attempt to commit the charged sex crimes, it has been held that the evidence may be entirely circumstantial (*People v Medina,* 44 NY2d 199, 204), and that it is sufficient if it affords proof of circumstances *tending* to show the existence of every material fact essential to prove the attempt (see *People v Bercume,* 38 AD2d 356, 358). There can be little dispute that the mother's testimony, that during their meeting at the A&P parking lot defendant asked her daughter to engage in fellatio and that she observed the daughter lowering her head to perform that act, is more than sufficient proof tending to establish an attempt to commit sodomy; defendant's counsel conceded as much at the trial. Although a closer question exists with respect to the offenses committed at the GEX store, we are of the view that the mother's testimony also is sufficiently corroborative, despite her disclaimer that on that occasion defendant physically did nothing more than touch her daughter's breasts through her sweater. She testified that this meeting had similarly been prearranged by her and defendant. She also testified that over the course of the several months of the various meetings, defendant paid her, incrementally, a total of between $1,000 and $1,500 — an amount dovetailing with the child's testimony. She also related her final telephone and face-to-face conversations with defendant, in which he apologized for getting her "involved" in "this kind of thing" and told her "he was sorry that it happened". A jury could well infer from the foregoing that the substantial separate payments of money would not have been made but for the separate, several sexual acts the child described, and that defendant's "involving" of the mother in "this kind of thing" was far more serious and protracted than the single instance of fondling the child which the mother maintained was the sole physical contact that ever occurred. Moreover, the jury had before it the fully corroborated evidence of the prior sodomy at the A&P parking lot. Evidence of that prior crime so closely related in nature and time of commission, is probative of a common design which the jury was entitled to consider in determining what happened at the prearranged meeting at the GEX parking lot, why defendant paid the mother on that occasion, what he was attempting to do when, as described by the mother, he touched the child's breast, and what he was referring to in his last conversations with the mother. Such prior conduct has been held corroborative evidence in sex offense cases under the same or similar circumstances (see *People v Fuller,* 50 NY2d 628, 636; *People v Fielding,* 39 NY2d 607, 612; *People v Thompson,* 212 NY 249, 252-254; *People v Grady,* 98 Misc 2d 473, 477-480; cf. *People v Jones,* 69 AD2d 912, 913, affd 51 NY2d 915). It has also been held to furnish the required corroboration of accomplice testimony, even when the corroborating prior crime was uncharged (*People v Ryan,* 12 AD2d 841, 842-843). The standard for accomplice corroboration is the same as that applied to victim corroboration in sex offense cases (*People v Fielding,* 39 NY2d 607, 609, *supra*). Cumulatively, the foregoing evidence was sufficient to corroborate the child's testimony and thereby support the second sodomy conviction. A fortiori, there similarly was sufficient evidence to sustain the convictions for sexual abuse. Finally, defendant contends that the court's imposition of consecutive sentences of from 2⅓ to 7 years on the sodomy convictions was harsh, excessive, and illegal. Relying upon *North Carolina v*

*Pearce* (395 US 711), he argues that there was an insufficient basis for the court to sentence him more severely than the 0- to 7-year term imposed after his earlier guilty plea. *Pearce* holds that upon retrial of the conviction reversed on appeal, the imposition of a more severe sanction by the original sentencing court is presumptively in retribution for the defendant having taken the appeal, and that, therefore, the validity of a more severe sentence is dependent upon there being new information concerning the defendant's " 'life, health, habits, conduct, and mental and moral propensities' " (*id.*, at p 723). Further, such pertinent information, which may consist of evidence introduced at the retrial itself, must affirmatively be identified on the record of the sentencing proceeding (*id.*, at p 726). Arguably, the fully fleshed out story of defendant's involvement in this sordid matter, as revealed at the trial, constituted sufficient new light about his conduct and character to justify the more severe sanctions imposed, as so stated by the court at sentencing. In any event, however, we find *Pearce* inapplicable where, as here, the original sentence was for a conviction based upon a negotiated plea, and after reversal of that conviction upon appeal, defendant is tried and convicted of additional serious charges. In contrast to the instant case, the defendants in *Pearce* and its companion case were reconvicted of either the same charge or a lesser number of charges than the original convictions. Surely, *Pearce* does not preclude a Judge, on sentencing following conviction after reversal, from taking into account convictions for additional serious crimes. This leaves open only the propriety of the court's imposition of a minimum sentence on each individual sodomy count, absent in the original sentence. This, however, poses no *Pearce* issue, i.e., the avoidance of a sentence based on vindictiveness for taking an appeal. The issue is really whether a court may impose a harsher sentence following jury trial than it was willing to impose to induce a guilty plea. The right of sentencing courts to treat differently defendants who are convicted after guilty pleas and those similarly convicted after trial has been steadfastly upheld, despite the potential "chilling effect" this may have on the exercise of an accused's right to a jury trial (see *Brady v United States,* 397 US 742, 752; *People v Pena,* 50 NY2d 400, 411-412, cert den 449 US 1087). Since there was no constitutional infirmity, and given the repulsive nature of defendant's conduct disclosed at the trial, we cannot say that the County Court abused its discretion in imposing its sentences. The convictions should be affirmed. Judgment affirmed. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur.