■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CALVIN DE VYVER, Also Known as DOUGLAS WILSON, Appellant. — Appeal from a judgment of the County Court of Ulster County (Vogt, J.), rendered April 28, 1981, upon a verdict convicting defendant of the crimes of kidnapping in the second degree, sodomy in the second degree, and criminal possession of a weapon in the third degree. Alice Sywilock first met defendant, known as Father Ron, in 1975, when she was experiencing difficulties raising her four sons and her husband John Sywilock (the boys' stepfather) was in prison. Defendant befriended the family helping with the boys and eventually taking Brian to live with him with the mother's consent. Wayne, age 8, often stayed with Brian and defendant on weekends. In 1977, when John Sywilock was released from prison, he unsuccessfully attempted to get Brian to return home. Wayne was prohibited from visiting defendant. In May, 1978, Wayne's brother, Donald, overheard defendant promising Wayne a motorcycle if he would leave home. On Easter Sunday of 1979, Wayne telephoned his mother to say he had just seen defendant, who wanted to talk to him. Two days later, Wayne did not return home and Mrs. Sywilock called the police and filed a missing persons report. Defendant denied any knowledge of Wayne's whereabouts. Defendant denied involvement when questioned by the New York City Missing Persons Squad (NYCMPS). In November, 1979, Kenneth Ruffo, Special Agent for the FBI, followed defendant to New Paltz, and learned that he was using the assumed

name Douglas R. Wilson, and was living in Modena, where Ruffo observed him and "some other smaller individuals" inside a trailer home. On January 20, 1980, Wayne Smith, Town Justice of Modena, identified defendant from a photograph and confirmed that two boys were living with him. The next day, armed with an arrest warrant for the kidnapping of Wayne Sperry, members of the State Police, NYCMPS, and FBI went to defendant's residence. After receiving no response to knocks on the door, they forcibly entered the trailer. State Police Investigator Gardner observed defendant reaching toward an open dresser drawer. After ordering defendant away, Gardner removed a gun from the drawer. Wayne Sperry was found naked in defendant's bed. Defendant was arrested. Defendant was indicted in a four-count indictment charging him with kidnapping in the first and second degree, sodomy in the second degree, and criminal possession of a weapon in the third degree. Defendant's pretrial motion to sever the weapon count was denied. Following a jury trial, defendant was convicted on all but the count charging kidnapping in the first degree. This appeal ensued. Defendant argues that his Fourth Amendment rights were violated by the warrantless arrest at his home on January 21, 1980.[*] He relies principally on the rule set forth in *Payton v New York* (445 US 573) which proscribes a warrantless, nonconsensual entry into a suspect's home to make a routine felony arrest. Although this court has recently held otherwise (see *People v Graham,* 76 AD2d 228, mot for lv to app den 53 NY2d 943; see, also, *People v Delgaizo,* 84 AD2d 646), it is now clear that *Payton* applies retroactively to an arrest that occurred before that decision in a case pending on direct appeal (*United States v Johnson,* __ US __, 50 USLW 4742). Here, defendant's arrest predates *Payton,* while the suppression hearing and conviction are post-*Payton.* Under these circumstances, the arrest must be scrutinized under the *Payton* standard, and since the warrant was held invalid, our query is whether the facts and circumstances presented an exigency justifying the intrusion. Prior to entry, the police knocked on the door and announced their identity and purpose. Someone responded but did not open the door. They heard footsteps inside retreating toward the back of the trailer and saw a rear light turned on. At this point, the officers were cognizant that an 11-year-old child was missing and reportedly abducted by defendant who had a lengthy criminal record which included multiple charges including weapons and sex offenses involving minors. They knew he was living with the victim under an assumed name in the very trailer they sought to enter. We do not perceive this situation as routine. Indeed, it is clear that immediate action was imperative. Faced with these exigent circumstances, the police were under a duty to enter the trailer to ensure the safety of the child (see *People v Adams,* 53 NY2d 1, 10-11). Moreover, beyond the exigencies of the situation, the arresting officers acted pursuant to what they thought was a validly executed arrest warrant. Application of the exclusionary rule in this instance of reasonable, good faith reliance by the police would not serve the salutary purpose of the rule in deterring police misconduct (*id.,* at pp 9-10). For these reasons, we find that the entry into defendant's trailer was proper. We further find that the ensuing search conducted by the police was lawful as incidental to a valid arrest (*Chimel v California,* 395 US 752). The record discloses that defendant was reaching toward a dresser drawer when confronted by Investigator Gardner, who ordered defendant away from the dresser and removed a gun. Defendant's contention that the drawer was beyond his reach merely presented a credibility question for resolution by the suppression court. Clearly, the officer did not conduct an unwarranted general search of the trailer, but only one necessitated by the circumstances of the arrest (*United States v*

---

[*] The suppression court ruled the warrant invalid due to the insufficiency of the underlying accusatory instrument.

*Chadwick,* 433 US 1). Thus, the court properly refused to suppress the gun. We note, finally, that defendant's reliance on *United States v Reed* (572 F2d 412, cert den *sub nom. Goldsmith v United States,* 439 US 913) to assert the unlawfulness of the warrantless arrest because of the presence of FBI agents notwithstanding a finding of probable cause, is misplaced. The arrest was conducted simultaneously by members of the New York State Police, NYCMPS, and FBI, whereas the *Reed* case involved an investigation and arrest for violations of Federal law conducted solely by Federal agents. The peripheral involvement by Federal agents here factually distinguishes this case from *United States v Reed (supra).* Defendant next argues that the evidence was insufficient as a matter of law to support either the kidnapping or sodomy convictions. In our view, the evidence clearly establishes that Wayne Sperry was "restrained" within the meaning of the relevant kidnapping statutes (Penal Law, §§ 135.00, 135.20). The Penal Law definition of "restrain" includes movement or confinement by "any means whatever, including acquiescence of the victim, if he is a child less than sixteen years old" (Penal Law, § 135.00, subd 1, par [b]). Defendant misconstrues this term in arguing that Wayne voluntarily accompanied him to Modena and was free to come and go as he pleased, since a child is incapable of consenting to any type of confinement. Nor can the boy's mother be said to have acquiesced in the arrangement. She had reported Wayne's disappearance, filed a missing persons report, and made repeated attempts to locate her son. That defendant vehemently denied knowledge of Wayne's whereabouts to the mother, and provided the victim with an assumed identity, further belies any contention that Wayne was freely living with him. We find ample evidence in the record to sustain the kidnapping conviction. Nor do we find support for defendant's contention that Wayne's testimony as to certain acts of sodomy falters because of a physician's opinion that the medical records failed to reflect any sexual abuse. In our view, this conflict in testimony merely presented a credibility question for the jury to resolve. The testimony they chose to believe was not incredible as a matter of law (*People v White,* 2 NY2d 220, 222). Moreover, the record discloses sufficient corroborative evidence to support the boy's testimony. Where lack of consent results from the infancy of an alleged victim, a defendant may not be convicted of a sex offense absent other evidence tending to establish defendant's connection with the commission of a criminal act (Penal Law, § 130.16). The independent corroborative evidence need not prove defendant's guilt to a moral certainty, but need simply harmonize with the victim's testimony in such a manner as to furnish the necessary connection between the defendant and the crime (*People v Kohut,* 30 NY2d 183, 193-194). In our view, the independent proof presents sufficient corroboration. Wayne testified to repeated acts of sodomy throughout his stay with defendant. Corroborating this testimony was the fact that Wayne shared a bed with defendant for nine months while a third bedroom went unused; at the time of defendant's arrest Wayne was discovered in defendant's bed totally unclad; defendant had taken pictures of Wayne in the nude; Wayne told his brother that he had had sexual contact with defendant; defendant admitted sexual contact with Wayne to Robert Schmidt; and, Wayne's testimony regarding prior uncharged sexual acts with defendant. On a cumulative basis, the evidence presented was more than sufficient to support the conviction for second degree sodomy (see *People v Elliott,* 106 NY 288; see, also, *People v Pepper,* 89 AD2d 714). We find no error in permitting the victim to testify to other, uncharged sexual acts since these tended to show defendant's amorous designs upon the victim (*People v Fuller,* 50 NY2d 628). We are not persuaded by defendant's contention that the trial court's instructions on corroboration

evidence (Penal Law, § 130.16) improperly usurped the province of the jury. It is clear that the sufficiency of corroborative evidence presents an issue for jury determination (see *People v Fiore,* 12 NY2d 188, 201-202). Defendant's reliance on *People v Stafford* (57 AD2d 965) is misplaced, since there a combination of errors regarding accomplice testimony was found to have unduly prejudiced the accused. Here, the court did not conclusively deprive the jury of its fact-finding function, and did advise the jury as to the quantum of evidence necessary to sustain a conviction. Premised on the foregoing and the abundance of corroborative evidence presented, we find the error, if any, harmless (*People v Crimmins,* 36 NY2d 230). Finally, we reject defendant's contention that the trial court's refusal to sever the fourth count of the indictment, which charged criminal possession of a weapon in the third degree, was improper and prejudicial. As discussed above, this count arose from the search incident to defendant's arrest at his trailer home on January 21, 1980. Offenses may be joined in a single indictment where, *inter alia,* they arise out of the same transaction, or where they arise out of separate transactions and proof of either would be material and admissible as evidence-in-chief at the trial of the other (CPL 200.20, subd 2, pars [a], [b]). While defendant's possession of the weapon was not shown to be part of the same criminal transaction, it was not totally unrelated to either of these charges (*People v Connors,* 83 AD2d 640). Defendant attempted to reach for the weapon upon entry of the police at a time when he was with the unclad child in bed. This bears significantly on the true nature of the living arrangement. In addition, all of the witnesses who would testify as to the weapon charge were necessarily part of the trial on the remaining counts of the indictment. We find no abuse of the court's discretion in refusing to grant a severance (CPL 200.20, subd 2; cf. *People v Shapiro,* 50 NY2d 747). We note that defendant's claim that this ruling prevented him from testifying was not raised before the trial court, and is thus not properly before us. In any event, defendant has failed to show how the severance denial affected his decision not to testify. We have examined defendant's remaining contentions and find them without merit. Judgment affirmed. Sweeney, J. P., Kane, Casey, Weiss and Levine, JJ., concur.

