[745 NYS2d 528]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JESUS CRUZ, Appellant.

First Department, July 25, 2002

## APPEARANCES OF COUNSEL

*David M. Cohn* of counsel (*Mark Dwyer* on the brief; *Robert M. Morgenthau, District Attorney,* New York County, attorney), for respondent.

*Sara Gurwitch* of counsel (*Richard M. Greenberg, Office of the Appellate Defender,* attorney), for appellant.

## OPINION OF THE COURT

SULLIVAN, J.

The primary question on this appeal is whether the merger doctrine (*see, People v Gonzalez,* 80 NY2d 146) precludes a conviction for attempted kidnapping when a related charge of attempted sodomy is dismissed for legal insufficiency.

On July 6, 1999, at about 5:00 P.M., Angelo Camacho was sitting in his car, next to a public park adjacent to 344 East 28th Street, between First and Second Avenues, in Manhattan. The park contained a playground, consisting of a wide open courtyard with benches and tables and a fountain in the center. Between 5:00 and 6:00 P.M., Camacho observed defendant about 12 feet from where Camacho's car was parked. Holding onto the fence and occasionally sipping from a can of beer, defendant watched the children playing near the sprinkler and would turn around whenever a woman passed by to "say something" to her. Camacho observed defendant for about 45 minutes. Shortly after 6:00 P.M., Bernadette A. arrived with her children, and sat on a bench with her infant daughter as her three sons, a nine year old, a seven year old and a five year old, played baseball with other children nearby. Ms. A. also noticed defendant standing outside of the fence drinking beer.

Meanwhile, Frances Garcia and her boyfriend, Armando Maldonado, who were walking past the playground with their three dogs, also observed defendant standing against the fence staring at the children in the playground. Camacho approached Maldonado and suggested that he tell Garcia to walk past defendant to see what defendant would say to her. As Garcia did so, she noticed that defendant looked drunk and that he smelled "very nasty." He made a comment to her, which she could not comprehend. She just walked past him, without asking him what he had said. Next, Maldonado walked toward

defendant. He noticed that defendant was very dirty and that, although he smelled of alcohol, he was walking normally and appeared to be sober. Maldonado observed defendant standing with one leg on the gate, facing the children in the playground, "playing" with his exposed penis. As Maldonado approached him and made eye contact, defendant "jumped up like a cat" and started to fix his pants. Maldonado returned to Garcia.

Thereafter, defendant walked to the field where the children were playing baseball and approached Ms. A's five-year-old son. After saying, "I want to take you home," and asking, "[W]here is your mom?," defendant grabbed the boy by the neck.[1] The boy's seven-year-old brother, who was about 15 feet away when defendant approached the five year old, walked over and pulled the latter away telling defendant, "Don't touch him, leave my little brother." Garcia, who had seen defendant grab the five year old, told Maldonado to "get [defendant] out of here." Maldonado approached defendant and told him to leave the area, threatening to call the police if he did not go. After protesting that he could do what he "want[s]" and telling Maldonado to "get the * * * f— out of here [and] leave [him] the f— alone," defendant did leave the playground. Defendant initially walked toward First Avenue and then began to pace back and forth until he finally proceeded up a hill, toward Second Avenue, where he was ultimately apprehended.

Defendant was charged with attempted kidnapping in the second degree, attempted sodomy in the first degree, public lewdness and endangering the welfare of a child. On the People's motion, the latter two counts were dismissed prior to trial. A nonjury trial was held, and at the close of the People's case, defendant moved to dismiss the two remaining counts, arguing, as to attempted sodomy, that there was insufficient evidence and, as to attempted kidnapping, that a conviction was barred by the merger doctrine. The People conceded that there was insufficient evidence of attempted sodomy, and the court dismissed that count. The court denied the motion to

---

1. There were slight variations in the witnesses' accounts. Garcia and Maldonado both testified that defendant grabbed the five year old. His seven-year-old brother initially testified, "I think [defendant] touched [him] in the neck or somewhere else," but when the court asked the seven year old whether the "man actually touch[ed] your brother or tr[ied] to touch your brother," the seven year old said that he "forgot." He also testified that after he pulled his brother away from the man, the man came over again and "touched him" on the neck, but when questioned more closely, he was not sure whether the man "c[a]me close to" his brother once or twice.

dismiss the attempted kidnapping charge and convicted defendant of attempted kidnapping in the second degree.

■ Defendant initially argues that the evidence was legally insufficient to support the attempted kidnapping conviction because there was no showing that defendant took any action to put the child in danger of being kidnapped. "A person is guilty of kidnapping in the second degree when he abducts another person." (Penal Law § 135.20.) Insofar as relevant, " '[a]bduct' means to restrain a person with intent to prevent his liberation by * * * secreting or holding him in a place where he is not likely to be found." (Penal Law § 135.00 [2].) "A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." (Penal Law § 110.00.) This provision has been construed as requiring proof that defendant engaged in conduct that came "very near" or "dangerously near" commission of the completed crime (*People v Acosta*, 80 NY2d 665, 670; *see also, People v Kassebaum*, 95 NY2d 611, 618, *cert denied* 532 US 1069).

The evidence in this case satisfies that standard. Defendant was observed watching the children in the park for 45 minutes, spending part of that time masturbating. This is sufficient to establish not only that his attention was focused on the children, but also that he obtained sexual gratification from observing them. Thereafter, defendant approached the five-year-old boy, told him, "I want to take you home," and grabbed him, clearly indicating that his objective was abduction. Only the immediate intervention of the boy's seven-year-old brother, and then Maldonado, prevented him from accomplishing this end and "tak[ing the boy] home." Contrary to defendant's claim, whether he actually had a home is irrelevant, since he could have taken the boy to any location, including a public place, which he might consider "home," where he was not likely to be observed.

■ Nor is there any merit to defendant's argument that he was too intoxicated to form the intent to kidnap. While there was evidence of defendant's intoxication, there was ample evidence that he was not in an incapacitated state. Maldonado testified that defendant walked normally and appeared sober, and the arresting officer testified that defendant responded appropriately when the officer approached him and asked for identification. According to the officer, defendant was walking "normal[ly]" at that time and, at the police station, was "steady, balanced, no particular difficulties with anything." Thus, the

evidence was sufficient to support a conclusion that defendant's intoxication did not negate his intent, which was clearly demonstrated by his own statement, "I want to take you home."

Moreover, while defendant also contends that intoxication prevented him from carrying out the act of taking the boy from the playground, he ignores the fact that he was convicted not of kidnapping but of attempted kidnapping. "[T]he very essence of a criminal attempt is the defendant's intention to cause the proscribed result." (*People v Campbell*, 72 NY2d 602, 605.) An attempt consists of deliberately performing a prohibited act, and the impossibility of carrying out the underlying crime does not negate intent. (*People v Davis*, 72 NY2d 32, 37.) The intent to commit a specific crime and an act or acts to carry out the intent is all that need be shown. (*See, People v Bracey*, 41 NY2d 296, 300; *People v Warren*, 66 NY2d 831, 832; *see also*, Penal Law § 110.00.) Finally, it should be noted, defendant declined, for strategic reasons, to present a defense of intoxication and should therefore not be permitted to raise the approximation of such a defense on appeal.[2]

■ Nor is there any merit to defendant's argument that the merger doctrine mandates dismissal of the conviction for attempted kidnapping. The merger doctrine precludes conviction for kidnapping based on acts which are "so much the part of another substantive crime that the substantive crime could not have been committed without such acts and that independent criminal responsibility may not fairly be attributed to them." (*People v Gonzalez, supra*, 80 NY2d 146, 153, quoting *People v Cassidy*, 40 NY2d 763, 767; *see also, People v Cain*, 76 NY2d 119, 125.) Thus, where the abduction and underlying crime are discrete, a kidnapping conviction will be sustained. On the other hand, where there is minimal asportation immediately before a robbery or sexual assault, or where the abduction and underlying crime are essentially simultaneous, merger will be found. (*People v Gonzalez, supra* at 153; *see, People v Lombardi*, 20 NY2d 266, 270 [kidnapping statute does not apply to "crimes which are essentially robbery, rape or assault and in which some confinement or asportation occurs as a subsidiary incident"].) While the doctrine can be applied even if a defendant is acquitted of the underlying crime (*see, People v Gonzalez, supra* at 148; *People v Usher*, 40 NY2d 763, *affg* 49 AD2d

---

2. Prior to trial the court stated that if defendant put forth a defense that he was intoxicated and was not aware of what he was doing, the People would be allowed to bring out that defendant was seen looking into a shower and observing his 12-year-old daughter.

499 [kidnapping conviction dismissed despite acquittal of robbery]) there is obviously no merger where kidnapping is the only crime charged (*People v Rios*, 60 NY2d 764, 766).

Even though the attempted sodomy count was dismissed, defendant argues that since, from the very beginning, the prosecution's theory was that defendant attempted to abduct the child for the purpose of performing a sexual act upon him, any attempt to abduct him would have been incidental to the sexual assault. Therefore, defendant urges, the attempted kidnapping charge must be dismissed. In our view, the dismissal of the attempted sodomy charge for insufficiency does not undermine the proof of defendant's attempt to commit the independent crime of kidnapping. The People's failure to present a prima facie case of attempted sodomy is the critical difference between this case and cases in which the kidnapping was held to merge even though the defendant was acquitted of the underlying substantive charge (*see, e.g., People v Usher, supra,* 40 NY2d 763). Since there was not enough evidence, prima facie, to sustain the attempted sodomy charge, and defendant did not face conviction of that crime, there was no crime into which the attempted kidnapping could merge. As the Court of Appeals has observed, "Whether there is an acquittal or conviction of the underlying crime, in each case the question is simply this: did the Legislature intend to punish the restraint or abduction separately?" (*People v Gonzalez, supra,* 80 NY2d at 152.) There can be a merger only when the answer is, "No." That question cannot possibly be answered in the negative, however, where there is sufficient evidence of restraint but insufficient evidence of the other charged crime.

Accordingly, the judgment of Supreme Court, New York County (Laura Drager, J.), rendered January 31, 2000, convicting defendant, after a nonjury trial, of attempted kidnapping in the second degree and sentencing him, as a second felony offender, to a term of six years, should be affirmed.

NARDELLI, J.P., TOM, RUBIN and FRIEDMAN, JJ., concur.

Judgment, Supreme Court, New York County, rendered January 31, 2000, affirmed.