■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAYMOND DENSON, Appellant. [980 NYS2d 434]—

Judgment, Supreme Court, New York County (James A. Yates, J.), rendered September 19, 2002, convicting defendant, after a nonjury trial, of attempted kidnapping in the second degree and endangering the welfare of a child, and sentencing him to an aggregate term of 10 years, affirmed.

The crime of attempted kidnapping in the second degree was established by evidence that defendant intended to secrete or hold the 10-year-old victim in his apartment, a place where she was not likely to be found; that he made efforts to move or

confine the victim without consent (*see* Penal Law §§ 135.00, 135.20); and that defendant came dangerously near to achieving his objective.

The evidence left no doubt that the victim was unlikely to be found had she succumbed to defendant's pressure to take his keys and go to the apartment. Similarly, the evidence left no doubt that defendant, a "highly-fixated" pedophile, attempted to restrain the victim, i.e., to move her to a different location without the permission of her mother.

The dissent, in arguing that the crime was not established because defendant did not grab or unsuccessfully attempt to grab the victim, misconstrues the statutory requirement of restraint. While, with respect to an adult, it is necessary to establish that the movement or confinement was accomplished by "force, intimidation or deception," the definition of restraint, with respect to a child less than 16 years of age, encompasses movement or confinement by "any means whatever," including the acquiescence of the child (Penal Law § 135.00 [1] [b]). In relaxing the requirement with respect to minors, the legislature recognized that a child is not possessed of the same faculties as an adult and is incapable of consenting to any type of confinement.

Defendant engaged in a calculated effort to lure the victim to his apartment. Having observed the daily ingress and egress of the victim and her mother, defendant was well aware that the victim walked home from school unaccompanied. His insistence that she go to his apartment, and his offer of keys, were steps that came "dangerously near" to accomplishing his objective (*see People v Cruz*, 296 AD2d 22, 25 [1st Dept 2002], *lv denied* 99 NY2d 534 [2002]). Indeed, had the victim complied with his request and gone to the apartment, the crime of second-degree kidnapping would have been complete (*see People v De Vyver*, 89 AD2d 745, 747 [3d Dept 1982]).

There was extensive evidence to support the conclusion that defendant's motive was to sexually molest the victim, which, contrary to the dissent's contention, was highly probative of his intent to abduct her. Defendant's entire course of conduct toward the victim mirrored his conduct toward his stepdaughter, whom he had molested years earlier. Even the defense expert agreed that defendant was attracted to and "highly fixated" on the victim and had "eroticized thoughts" about her. The defense expert further testified that defendant had attempted to forge an adult-type relationship with the victim, as he had with his stepdaughter, and agreed that he was "in pursuit" of the girl. The evidence established that defendant repeatedly offered to

take the victim out to get ice cream, to go ice skating, or to go to the movies. On one occasion, when the victim and her mother were in the street attempting to hail a taxi, defendant approached the victim and asked her to see a movie. On another, defendant unexpectedly knocked on the door to the victim's apartment (visitors were supposed to use an intercom system to gain admittance to the building, and no one had called up). The victim opened the door, surprised to see defendant standing there, wearing a crushed red velvet suit, red shoes and a beret. It was a Sunday, a day when the hardware store he worked at on the ground floor of the building was closed. Defendant asked the victim whether she was ready to go to the movies, and whether she was "busy" that week.

Under the unusual circumstances of this case, the court properly exercised its discretion in receiving testimony regarding defendant's prior conviction of a sex crime committed against a child, as well as its underlying facts, on the issue of intent. As discussed, above, there was extensive expert testimony that connected the past crime involving defendant's stepdaughter to defendant's intent in this case, by showing that defendant's fixation and sexual fantasy regarding his stepdaughter had been transferred to the victim in this case. Moreover, the court in a nonjury trial is presumed to have disregarded prejudicial matter (*see People v Moreno*, 70 NY2d 403, 406 [1987]), and here the court made it clear that it was not treating this testimony as propensity evidence.

There is no merit to defendant's argument that the merger doctrine mandates dismissal of the attempted kidnapping charge on the ground that any confinement of the victim in defendant's apartment would have been incidental to a sex offense. Defendant was not charged with any sex offense, and "there is obviously no merger where kidnapping is the only crime charged" (*Cruz*, 296 AD2d at 27; *see also People v Rios*, 60 NY2d 764, 766 [1983]).

The court properly denied defendant's motion to suppress statements. The initial police questioning did not require *Miranda* warnings, because a reasonable innocent person in defendant's position would not have thought he was in custody (*see People v Yukl*, 25 NY2d 585 [1969], *cert denied* 400 US 851 [1970]). When defendant made a limited invocation of his right of silence as to some aspects of the case, the initial detective asked nothing more than a pedigree question, and defendant's post-*Miranda* statement, made hours later to another detective, was admissible (*see Michigan v Mosley*, 423 US 96 [1975]; *People v Gary*, 31 NY2d 68 [1972]).

Defendant's ineffective assistance of counsel claims are unreviewable on direct appeal because they involve matters not reflected in, or not fully explained by, the trial record concerning counsel's preparation and strategic choices (*see People v Love*, 57 NY2d 998 [1982]). On the existing record, to the extent it permits review, we find that defendant received effective assistance under the state and federal standards (*see People v Benevento*, 91 NY2d 708, 713-714 [1998]; *see also Strickland v Washington*, 466 US 668 [1984]). Defendant has not shown "the absence of strategic or other legitimate explanations" for the challenged aspects of counsel's performance (*People v Rivera*, 71 NY2d 705, 709 [1988]), or that these alleged deficiencies deprived defendant of a fair trial, affected the outcome of the case, or caused defendant any prejudice.

Defendant's contentions regarding the prosecutor's alleged misconduct are unpreserved, and we decline to review them in the interest of justice. As an alternative holding, we find that although the prosecutor was somewhat overzealous in his cross-examination of the defense expert witness, there was no prejudice to defendant, particularly in the context of a nonjury trial (*see Moreno*, 70 NY2d at 406). Concur—Mazzarelli, J.P., Manzanet-Daniels, Gische, JJ.

Andrias and Saxe, JJ., dissent in part in a memorandum by Saxe, J., as follows: Even a convicted sexual predator like defendant—one who committed a sex crime against his young stepdaughter more than 20 years ago—is entitled to protection from an overcharged prosecution arising from accusations that defendant had begun to focus his attention on another young girl. The conviction for the crime of attempted kidnapping in the second degree was not supported by sufficient evidence, since defendant's conduct did not bring the intended crime dangerously near to completion. Rather, it relies primarily on what amounts to propensity evidence, essentially reasoning that based on defendant's prior act of molesting a child, we can expect that he would do it again. The only valid inference that may be made from the facts adduced at trial, namely, that defendant had hoped to have the opportunity to sexually molest the complainant, is not sufficient to establish all the elements of an attempted kidnapping. I therefore dissent.

The record established that the 54-year-old defendant, who had a 20-year-old conviction for a sex crime against his young stepdaughter, was considered by mental health professionals to be a pedophile and that he had focused his interest on the 10-year-old complainant. He was employed at a hardware store occupying the ground floor of the building in which her apart-

ment was located. The girl's testimony showed that in 1998, when she began attending the junior high school across the street, and was permitted to walk home alone and to stay home unsupervised until her mother returned from work, defendant began to offer to take her out to get ice cream, to go ice skating, or to go to the movies; she rejected these repeated requests. In late August 1998, while the girl was waiting on the sidewalk in front of the building for her mother to hail a cab, defendant approached her and offered to take her to see the movie "Blade"; she declined.

On Sunday, September 6, 1998, the girl heard an unexpected knock on the door to her apartment. Visitors need to use an intercom system to gain admittance to the building, and no one had called up to her apartment. She responded to the knock because her mother was in the shower at the time. She asked who was there, but got no response. When she looked through the peephole, she could not see anyone. She then put the chain on the door and opened it slightly, and was surprised to see defendant standing there, since the hardware store was closed on Sundays. Defendant was dressed up, and asked the girl if she was "ready to go to the movies." She said no, and that she had never agreed to go to the movies with defendant. Defendant then asked if she was "busy this week." She said that she was and closed the door.

Later that week, on Friday, September 11, 1998, the girl saw defendant on her way home from school. As she entered the building, defendant greeted her, got within two to three feet from her and said, "Here's the keys to my apartment," as he tried to remove the keys from the chain that he wore around his neck. The girl refused to take the keys. Defendant insisted, asking her three times if she was sure. He then said, "Well, if you think about it, meet me downstairs at four o'clock and I'll go get you some ice cream."

By this time, the girl had become frightened of what defendant might do; she and her mother soon contacted the police and filed a complaint, and the police began an investigation.

In his statement to the police, defendant asserted that he and the girl were friends, that they had had many conversations, that he had asked her out on dates a number of times, that on one occasion he knocked on the girl's door and asked her out to the movies, and that on another occasion he offered her the keys to his apartment and "suggested that she stay at his apartment until he got off of work, [and] that she could play with his cats."

Defendant was arrested and charged with attempted kidnap-

ping in the second degree (Penal Law §§ 135.20, 110.00) and endangering the welfare of a child (Penal Law § 260.10 [1]), and was convicted of both counts after a nonjury trial.

I do not dispute that defendant was a pedophile who had focused his attentions and delusions on the complainant. There is no question that he engaged in criminal conduct, including endangering the welfare of a child. The point I dispute is that the acts he engaged in constituted attempted kidnapping.

"A person is guilty of kidnapping in the second degree when he abducts another person" (Penal Law § 135.20). For the purposes of this case, the definition of "abduct" is "to restrain a person with intent to prevent his liberation by . . . secreting or holding him in a place where he is not likely to be found" (Penal Law § 135.00 [2]). "Restraint," in turn, is defined as the intentional restriction of a person's movements "by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent and with knowledge that the restriction is unlawful" (Penal Law § 135.00 [1]). The movement or confinement is "without consent" when accomplished by "any means whatever, including acquiescence of the victim, if he is a child less than sixteen years old . . . and the parent, guardian or other person or institution having lawful control or custody of him has not acquiesced in the movement or confinement" (Penal Law § 135.00 [1] [b]).

Thus, the kidnapping of a child under 16 may be established if the defendant moved the child from one place to another, even with her acquiescence (as long as the parent has not acquiesced), with the intent to secrete or hold her in a place where she is not likely to be found, as occurred in *People v Helbrans* (228 AD2d 612 [2d Dept 1996], *lv denied* 89 NY2d 923 [1996]). There, the elements of kidnapping were satisfied despite the child-victim's acquiescence, where the defendant, a Hasidic rabbi, prevented the parents of a 13-year-old boy who was studying at his yeshiva from removing their son from the yeshiva, and ultimately secreted the boy to prevent his parents from finding him. The question in the present case is whether defendant's attempt to give the girl the keys to his apartment is sufficient to establish an attempted kidnapping.

"A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime (Penal Law § 110.00). An attempt is cognizable only where the defendant's conduct has brought the intended crime "dangerously near" to completion (*see People v Naradzay*, 11 NY3d 460, 466 [2008]; *People v Bracey*, 41 NY2d 296, 300 [1977]).

I do not agree with the majority's conclusion that defendant came dangerously close to completing the kidnapping since all that would have been needed to complete a second-degree kidnapping was the victim's compliance with his request. The attempted kidnapping cases the majority relies on include some act by the defendant that involved taking hold of the child. In *People v Cruz* (296 AD2d 22, 25 [1st Dept 2002], *lv denied* 99 NY2d 534 [2002]), where the conviction of attempted kidnapping in the second degree was affirmed, the defendant physically grabbed the five-year-old boy, telling him he wanted to take him home. In another attempted kidnapping case, *People v Antonio* (58 AD3d 515 [1st Dept 2009], *lv denied* 12 NY3d 814 [2009]), where the defendant followed and ran after an 11-year-old girl after expressing his interest in her, going so far as to grab at the girl's hand and falsely claim to a bystander that he was the girl's father, this Court explained that "[b]y telling the man who was trying to protect the girl that he, defendant, was the girl's father, defendant evinced his desire to gain control over the girl[, and] [b]y reaching out for the girl's hand, he demonstrated his intention to restrain her" (*id.* at 516). Here, defendant did not grab or unsuccessfully attempt to grab a child, with the intent to take the child away. Rather, he tried to convince her to accept his apartment keys in the hope that she would cooperate with his delusional plans.

To successfully prove that defendant came dangerously near to completing a kidnapping of the child in this particular situation, the evidence would have had to show either that he was near forcibly taking her, as occurred in *Cruz* and *Antonio*, or that he came close to taking her with her acquiescence. However, neither means of committing an attempted kidnapping of the child was near completion here. Rather, the evidence establishes that there was essentially no possibility that the child was going to comply with defendant's request.

The reasoning that all that would have been needed to complete a second-degree kidnapping was the victim's compliance with his request ignores this fact. A different conclusion would be appropriate if there was proof that in the circumstances or based on her personality, or for some other reason, there was a possibility that the girl would agree to take his keys and wait for him in his apartment. But that is not the case here.

In addition, there is a fundamental flaw in the majority's reasoning that defendant's motive to sexually molest the victim was "highly probative of his intent to abduct the victim." The majority makes an unreasonable leap in logic, and embraces

fuzzy psychology, when it infers the intent to abduct based on (1) the similarity in appearance between defendant's stepdaughter and the complainant, and (2) the reasoning that since (unlike his stepdaughter) the complainant did not live with him, defendant's desires would have included an intent to abduct her. Defendant's sexual interest in the complainant did not justify an inference that he harbored the intent to abduct her at that time of the alleged attempted kidnapping; nor did his actual conduct toward her justify any such inference. The inference of an intent to abduct may not properly be based on the suggestion of the People's expert, in the context of her explanation of the psychological stages in which child molesters gain access to the targeted child, that defendant might have arrived at the point at which he needed to "take control" by abducting the girl. The expert's suggestion amounted to no more than a theoretical conjecture, which finds no support in the record. The expert also relied for her conclusion on propensity evidence, by reasoning that based on defendant's prior act of molesting a child, we can assume that he would do it again.

By upholding defendant's conviction for attempted kidnapping, the majority is, in effect, punishing him for his status rather than for his commission of the crime with which he was charged. Defendant engaged in frightening and deluded criminal conduct. There is reason to be concerned that his desires and delusions could ultimately lead him to actually engage in conduct amounting to kidnapping. However, the conduct demonstrated at trial falls short of an attempted kidnapping as the statute and the cases define it.