Judgment, Supreme Court, New York County (James A. Yates, J.), rendered September 19, 2002, convicting defendant, after a nonjury trial, of attempted kidnapping in the second degree and endangering the welfare of a child, and sentencing him to an aggregate term of 10 years, affirmed.
The crime of attempted kidnapping in the second degree was established by evidence that defendant intended to secrete or hold the 10-year-old victim in his apartment, a place where she was not likely to be found; that he made efforts to move or *544 confine the victim without consent (see Penal Law §§ 135.00, 135.20); and that defendant came dangerously near to achieving his objective.
The evidence left no doubt that the victim was unlikely to be found had she succumbed to defendant’s pressure to take his keys and go to the apartment. Similarly, the evidence left no doubt that defendant, a “highly-fixated” pedophile, attempted to restrain the victim, i.e., to move her to a different location without the permission of her mother.
The dissent, in arguing that the crime was not established because defendant did not grab or unsuccessfully attempt to grab the victim, misconstrues the statutory requirement of restraint. While, with respect to an adult, it is necessary to establish that the movement or confinement was accomplished by “force, intimidation or deception,” the definition of restraint, with respect to a child less than 16 years of age, encompasses movement or confinement by “any means whatever,” including the acquiescence of the child (Penal Law § 135.00 [1] [b]). In relaxing the requirement with respect to minors, the legislature recognized that a child is not possessed of the same faculties as an adult and is incapable of consenting to any type of confinement.
Defendant engaged in a calculated effort to lure the victim to his apartment. Having observed the daily ingress and egress of the victim and her mother, defendant was well aware that the victim walked home from school unaccompanied. His insistence that she go to his apartment, and his offer of keys, were steps that came “dangerously near” to accomplishing his objective (see People v Cruz, 296 AD2d 22, 25 [1st Dept 2002], lv denied 99 NY2d 534 [2002]). Indeed, had the victim complied with his request and gone to the apartment, the crime of second-degree kidnapping would have been complete (see People v De Vyver, 89 AD2d 745, 747 [3d Dept 1982]).
There was extensive evidence to support the conclusion that defendant’s motive was to sexually molest the victim, which, contrary to the dissent’s contention, was highly probative of his intent to abduct her. Defendant’s entire course of conduct toward the victim mirrored his conduct toward his stepdaughter, whom he had molested years earlier. Even the defense expert agreed that defendant was attracted to and “highly fixated” on the victim and had “eroticized thoughts” about her. The defense expert further testified that defendant had attempted to forge an adult-type relationship with the victim, as he had with his stepdaughter, and agreed that he was “in pursuit” of the girl. The evidence established that defendant repeatedly offered to *545 take the victim out to get ice cream, to go ice skating, or to go to the movies. On one occasion, when the victim and her mother were in the street attempting to hail a taxi, defendant approached the victim and asked her to see a movie. On another, defendant unexpectedly knocked on the door to the victim’s apartment (visitors were supposed to use an intercom system to gain admittance to the building, and no one had called up). The victim opened the door, surprised to see defendant standing there, wearing a crushed red velvet suit, red shoes and a beret. It was a Sunday, a day when the hardware store he worked at on the ground floor of the building was closed. Defendant asked the victim whether she was ready to go to the movies, and whether she was “busy” that week.
Under the unusual circumstances of this case, the court properly exercised its discretion in receiving testimony regarding defendant’s prior conviction of a sex crime committed against a child, as well as its underlying facts, on the issue of intent. As discussed, above, there was extensive expert testimony that connected the past crime involving defendant’s stepdaughter to defendant’s intent in this case, by showing that defendant’s fixation and sexual fantasy regarding his stepdaughter had been transferred to the victim in this case. Moreover, the court in a nonjury trial is presumed to have disregarded prejudicial matter (see People v Moreno, 70 NY2d 403, 406 [1987]), and here the court made it clear that it was not treating this testimony as propensity evidence.
There is no merit to defendant’s argument that the merger doctrine mandates dismissal of the attempted kidnapping charge on the ground that any confinement of the victim in defendant’s apartment would have been incidental to a sex offense. Defendant was not charged with any sex offense, and “there is obviously no merger where kidnapping is the only crime charged” (Cruz, 296 AD2d at 27; see also People v Rios, 60 NY2d 764, 766 [1983]).
The court properly denied defendant’s motion to suppress statements. The initial police questioning did not require Miranda warnings, because a reasonable innocent person in defendant’s position would not have thought he was in custody (see People v Yukl, 25 NY2d 585 [1969], cert denied 400 US 851 [1970]). When defendant made a limited invocation of his right of silence as to some aspects of the case, the initial detective asked nothing more than a pedigree question, and defendant’s post -Miranda statement, made hours later to another detective, was admissible (see Michigan v Mosley, 423 US 96 [1975]; People v Gary, 31 NY2d 68 [1972]).
*546 Defendant’s ineffective assistance of counsel claims are unreviewable on direct appeal because they involve matters not reflected in, or not fully explained by, the trial record concerning counsel’s preparation and strategic choices (see People v Love, 57 NY2d 998 [1982]). On the existing record, to the extent it permits review, we find that defendant received effective assistance under the state and federal standards (see People v Benevento, 91 NY2d 708, 713-714 [1998]; see also Strickland v Washington, 466 US 668 [1984]). Defendant has not shown “the absence of strategic or other legitimate explanations” for the challenged aspects of counsel’s performance (People v Rivera, 71 NY2d 705, 709 [1988]), or that these alleged deficiencies deprived defendant of a fair trial, affected the outcome of the case, or caused defendant any prejudice.
Defendant’s contentions regarding the prosecutor’s alleged misconduct are unpreserved, and we decline to review them in the interest of justice. As an alternative holding, we find that although the prosecutor was somewhat overzealous in his cross-examination of the defense expert witness, there was no prejudice to defendant, particularly in the context of a nonjury trial (see Moreno, 70 NY2d at 406). Concur — Mazzarelli, J.P., Manzanet-Daniels, Gische, JJ.