People v Hall (2026 NY Slip Op 01247)

People v Hall

2026 NY Slip Op 01247

Decided on March 5, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 5, 2026

CR-23-1249
[*1]The People of the State of New York, Respondent,
vLloyd S. Hall, Appellant.

Calendar Date:January 14, 2026

Before:Reynolds Fitzgerald, J.P., Ceresia, Fisher, McShan and Mackey, JJ.

Lisa A. Burgess, Indian Lake, for appellant.
J. Anthony Jordan, District Attorney, Fort Edward (Taylor Fitzsimmons of counsel), for respondent.

Fisher, J.
Appeal from a judgment of the County Court of Washington County (Kelly McKeighan, J.), rendered January 6, 2023, convicting defendant following a nonjury trial of the crimes of attempted kidnapping in the second degree, attempted sexual abuse in the first degree and endangering the welfare of a child.
In 2022, the victim (born in 2011) was walking home from the bus stop when defendant, a 59-year-old man, handed her a letter professing his love for her and that he wished they could "be alone together." The victim provided the letter to her parents, who notified the police. A local police sergeant, posing as the victim, used the cell phone number listed in the letter to begin a text message conversation with defendant. Such conversation became sexual in nature and, with the prospect of engaging in sexual activity, defendant agreed to meet with the victim at a local athletic field. Upon his arrival, defendant was taken into custody and interviewed by an investigator with the State Police at a local barracks. Thereafter, defendant was indicted on the charges of attempted kidnapping in the second degree, attempted sexual abuse in the first degree and endangering the welfare of a child. Following a nonjury trial, defendant was convicted as charged and County Court imposed sentences amounting to a total of 10 years in prison, to be followed by 10 years of postrelease supervision. Defendant appeals.
Defendant's sole contention on appeal is that his conviction for attempted kidnapping in the second degree is against the weight of the evidence. We disagree. When conducting "a weight of the evidence review, this Court must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and, if not, then it must weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence. When conducting this review, this Court considers the evidence in a neutral light and defers to the factfinder's credibility assessments" (People v Holmes, 227 AD3d 1184, 1186 [3d Dept 2024] [internal quotation marks, brackets and citations omitted], lv denied 42 NY3d 971 [2024]). As charged here, "[a] person is guilty of an attempt to commit a crime when, with intent to commit a crime, he [or she] engages in conduct which tends to effect the commission of such crime" (Penal Law § 110.00). Thus, a conviction for attempted kidnapping in the second degree requires proof that the defendant engaged in conduct that came dangerously near to abducting another person (see Penal Law § 135.20; People v Denson, 26 NY3d 179, 190 [2015]; see generally People v Henehan, 238 AD3d 1336, 1337 [3d Dept 2025], lv denied 43 NY3d 1055 [2025]). To abduct another person "means to restrain a person with intent to prevent his [or her] liberation by . . . secreting or holding him [or her] in a place where he[*2][or she] is not likely to be found" (Penal Law § 135.00 [2]; see People v White, 231 AD3d 1429, 1432 [3d Dept 2024], lv denied 42 NY3d 1082 [2025]). Penal Law § 135.00 (1) defines "restrain" as meaning "to restrict a person's movements intentionally and unlawfully in such manner as to interfere substantially with his [or her] liberty by moving him [or her] from one place to another,
. . . without consent and with knowledge that the restriction is unlawful." Where the victim is a child less than 16 years old, the statute further provides that a victim may be "so moved or confined 'without consent' when such is accomplished by . . . any means whatever, including acquiescence of the victim, if . . . the parent . . . having lawful control or custody of him [or her] has not acquiesced in the movement or confinement" (Penal Law § 135.00 [1]).
The evidence adduced at trial demonstrated that defendant handed the victim a letter and told her to read it when she was alone, then flush it down the toilet. The letter contained sexual undertones and acknowledged that the victim's parents kept a "good eye" on her, but hoped they could spend time "alone together" — including at his residence. The victim's parents testified that they did not, and would not, have given defendant permission to take the victim to his house or spend time alone with the victim, and that the victim was not allowed to go anywhere without their permission — including to the athletic fields. The testimony of the sergeant highlighted certain parts of the text message conversation with defendant, including that defendant urged the victim to "be so careful" and that they could get in "huge trouble" if anyone thought they were seeing each other — ultimately agreeing with the sergeant, posing as the victim, that they should delete their text messages. Defendant's interview at the State Police barracks after being taken into custody was recorded and introduced at trial. Such footage depicted defendant expressing concern that there were "cameras everywhere" and that he would not have tried to engage in anything sexual with the victim at the athletic fields, but that he was hoping to be able to talk to her and "maybe figure out a way to meet somewhere[ ] that wasn't so public." When asked what he would have done if the victim had wanted to have sex with him, defendant emphasized "not there" because of cameras. Defendant signed a statement memorializing certain admissions made during his interview.
Based on the foregoing, a different verdict would not have been unreasonable given defendant's denial of any intent to kidnap the victim and the existence of at least some conflicting evidence in the record that he had a plan to do so (see People v Terry, 240 AD3d 1128, 1131 [3d Dept 2025], lv denied 44 NY3d 995 [2025]; People v Christie, 224 AD3d 1097, 1100 [3d Dept 2024]). Nevertheless, viewing the evidence in a neutral light and deferring to County Court's credibility determinations, we are satisfied [*3]that the weight of the evidence supports defendant's conviction of attempted kidnapping in the second degree. Defendant told the police that he intended to meet with the victim to take her somewhere private, which constituted restraining the victim by confining and moving her to a place "without consent," given that she was less than 16 years old and her parents did not give defendant permission to do so (Penal Law § 135.00 [1]; see People v Denson, 26 NY3d at 190-192; People v Kimmy, 137 AD3d 1723, 1724 [4th Dept 2016], lv denied 27 NY3d 1134 [2016]; People v Cruz, 296 AD2d 22, 25 [1st Dept 2002], lv denied 99 NY2d 534 [2002]). Defendant's intent to abduct the victim by preventing her liberation by secreting or holding her in a place where she was not likely to be found may be inferred from the letter, signed statement and interview footage, where he repeatedly expressed concern about being seen together in public on camera or detected by the victim's parents — as well as his urging the victim to keep their interactions secret from others by reading the letter alone, flushing it down the toilet, deleting her text messages, knocking on his window at night, and going to see him when she was at a relative's house and away from her parents' close supervision (see Penal Law § 135.00 [2]; People v Delp, 156 AD3d 1450, 1452 [4th Dept 2017], lv denied 31 NY3d 983 [2018]). Accordingly, since the record demonstrates that defendant came dangerously close to abducting the victim at the athletic fields and taking her to another location where she was unlikely to be observed, we discern no basis to disturb the verdict (see People v White, 231 AD3d at 1432; People v Cruz, 296 AD2d at 25; People v Rand, 167 AD2d 433, 435 [2d Dept 1990], lv denied 78 NY2d 957 [1991]; see also People v De Vyver, 89 AD2d 745, 747 [3d Dept 1982]). We have examined defendant's remaining contentions and have found them to be without merit or academic.
Reynolds Fitzgerald, J.P., Ceresia, McShan and Mackey, JJ., concur.
ORDERED that the judgment is affirmed.