[702 NYS2d 393]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PATRICK H. MAY, Appellant.

Third Department, January 6, 2000

216

## APPEARANCES OF COUNSEL

*Lawrence Martin Cohn,* Albany, for appellant.

*Sterling T. Goodspeed, District Attorney* of Warren County, Lake George (*John P.M. Wappett* of counsel), for respondent.

## OPINION OF THE COURT

PETERS, J.

In August 1995, a 12-year-old child (hereinafter the victim) disappeared while riding her bicycle in the Town of Horicon, Warren County. Although she called her mother and advised that she would be biking right home, she did not return. The victim's mother discovered the bicycle along the side of the road and immediately notified the police.

An extensive investigation, involving numerous law enforcement agencies, was commenced in the immediate area but little information was acquired. The following morning, the victim was found wandering dazed and naked in a rural area approximately 20 miles away. She was bruised, scratched, and the entire whites of both eyes were bright red. She was taken to the hospital and was initially unable to provide police authorities with any details.

Over the next several days, she began to recall some of the details. She remembered that upon her return from the store, a man stopped his car in front of her bicycle, chased her through the woods and forced her to have sexual intercourse. He then placed her naked body into his car on the floorboard of the front seat where she lay huddled and naked for approximately 10 to 15 minutes while he drove to another wooded location which she called the "nowhere place." En route, he gave her a soda from a cooler in the car. At the "nowhere place," he raped her again and anally sodomized her while her hands were taped with duct tape. After one sexual attack, she said that she needed to go to the bathroom as an excuse to go to the

rear area of the car to memorize the letters and numbers on the license plate. She also recalled that the vehicle had a sunroof and that there was an air freshener in it. Finally, she recalled that he told her that he had recently been to Florida. A medical examination revealed that she had been raped, sodomized and that someone had tried to strangle her.

The law enforcement investigation included a search for local residents who had a previous record for committing sexual attacks. Defendant was contacted by Investigator Robert Snyder of the Warren County Sheriff's Department and was asked about his whereabouts on the day of the abduction and about the type of vehicle that he drove. Following defendant's consent to further questioning, Snyder, while traveling to defendant's residence, learned that an automobile accident had just taken place and that defendant's vehicle was involved. Accompanied by another investigator, Snyder discovered that defendant had driven his 1981 Chevrolet Malibu automobile with license plate TLM 402 into a tree and needed to be transported to a hospital in Vermont for treatment. At the time of the collision, a red and white cooler, duct tape and a tree-shaped air freshener were in his vehicle.

Defendant was administered a general anesthetic and underwent surgery on August 14, 1995 for repair of a scalp laceration, a right elbow laceration, a pelvic fracture and treatment of a skin tear in his groin area. Surgery began at 7:00 P.M., lasted for two hours and required injections of morphine for pain. According to defendant's anesthesiologist as well as the nursing staff, the anesthetics wore off within three to six hours postoperatively. Morphine was administered on August 15, 1995 at 12:10 A.M., 1:10 A.M., 5:15 A.M., 9:40 A.M., 11:00 A.M. and 12:30 P.M. Testimony established that while the morphine might have made defendant drowsy, it would not have made him delusional or hallucinogenic. State Police investigators interviewed defendant at 4:40 A.M., 8:45 A.M. and 12:00 noon on that day. According to the police, defendant was well aware of his surroundings and knew their identity and purpose. His treating nurse testified that she was present during their administration of his *Miranda* rights and heard him waive those rights and agree to the interview; she described him as cognizant, alert and awake during the interview, speaking in clear sentences. Throughout the day, defendant's wife and other family members visited him and were able to move in and out of his room.

During these interrogations, defendant made incriminating statements to the police, inculpating himself in the disappear-

ance of the victim. He admitted, *inter alia*, picking up a girl by the river who had been riding a bicycle. When asked whether he hurt her, his response included a statement that she bit his penis. He admitted abandoning her near the location where this victim was found, of having engaged in oral sodomy and of having intercourse with her "in different ways," but did not know if she was dead or alive since she was unconscious when he left her. Forensic examination revealed that marks on defendant's body, including his scrotum, were consistent with human bite marks caused by the victim.

Charged with one count of attempted murder in the second degree, one count of kidnapping in the second degree, two counts of rape in the first degree, two counts of sodomy in the first degree and one count of endangering the welfare of a child, defendant was found guilty of all charges submitted to the jury.[1] After being sentenced as a second felony offender to consecutive terms of imprisonment of 12½ to 25 years on all six counts, this appeal ensued.

■ Defendant contends that his statements and admissions should have been suppressed as involuntary since the extensive surgery and morphine so impaired his physical and mental condition to the "extent of undermining his ability to make a choice whether or not to make a statement" (CPL 60.45 [2] [a]). While we agree that voluntariness is " 'a question of fact to be determined from the totality of the circumstances' " (*People v Miller*, 244 AD2d 828, quoting *Matter of James OO.*, 234 AD2d 822, 823, *lv denied* 89 NY2d 812) and that the prosecution bears the burden of proving, beyond a reasonable doubt, that each and every statement they seek to introduce was voluntary (*see, People v Anderson*, 42 NY2d 35, 38), the suppression court's factual findings are entitled to great weight. As they will not be set aside unless clearly erroneous (*see, People v Gagliardi*, 232 AD2d 879, 880), we conclude, in viewing the totality of the circumstances, that there is sufficient evidence to support the determination that each statement was voluntarily made (*see, People v Parson*, 209 AD2d 882, 883, *lv denied* 84 NY2d 1014).

■ As to the charge of oral sodomy, defendant raises both legal sufficiency and weight of the evidence challenges. Viewing the evidence in a light most favorable to the prosecution (*see, People v Harper*, 75 NY2d 313) to determine whether

---

1. The one charge of endangering the welfare of a child was never submitted.

"there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury * * * and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (*People v Bleakley*, 69 NY2d 490, 495 [citation omitted]; *see, People v Contes*, 60 NY2d 620, 621), we find that while Penal Law § 130.00 (2) requires "contact" between the mouth and the penis, penetration is not an essential element of forcible sodomy (*see, People v Herring*, 227 AD2d 658, 661, *lv denied* 88 NY2d 986; *People v Arkim*, 179 AD2d 1019, 1020, *lv denied* 79 NY2d 997; *People v Lipinski*, 159 AD2d 860, 861, *lv denied* 76 NY2d 860; *People v Griffin*, 96 AD2d 720; *People v Griffith*, 80 AD2d 590, 591). Hence, we reject any contentions of error predicated upon the lack of proof of actual penetration of defendant's penis into the victim's mouth. Defendant's admissions and statements concerning a bite mark on his penis, coupled with the confirmatory testimony of the forensic odontologist, belies any claim that the verdict convicting him of such charge was against the weight of the evidence or that County Court erred in denying his motion to dismiss.

■ ■ Finding defendant's challenge to County Court's failure to submit the charge of endangering the welfare of a child to the jury and charge such jury on the lesser included offense of attempted sodomy or harassment in connection with the count involving oral sodomy unpreserved,[2] we next address whether there should have been a merger of the conviction for kidnapping in the second degree with the conviction for attempted murder in the second degree. The record facts indicate that after the abduction and rape, the victim was transported approximately 20 miles to another isolated location where she was again raped and sodomized. Finding no lack of a genuine "kidnapping" flavor (*People v Cassidy*, 40 NY2d 763, 767) and that defendant's "restraint and asportation of the [victim] were accomplished by acts which were not merely incidental to and inseparable from acts which the People alleged constituted * * * sexual assault" (*People v Salimi*, 159 AD2d 658, *lv denied* 76 NY2d 742; *see, People v Shay*, 60 AD2d 698), we decline further review.

■ As to sentencing, the record reflects that County Court permitted, over defendant's objection, the victim as well as her mother and father to address the court. While CPL 380.50

---

2. Were we to consider these ascriptions of error, we would find them meritless (*see, People v Glover*, 57 NY2d 61, 64; *People v Rivera*, 261 AD2d 709, *lv denied* 93 NY2d 977; *People v Pozo*, 261 AD2d 144).

provides that a surrogate may address the court "if such victim is unable or unwilling to express himself or herself" (CPL 380.50 [2] [a] [2]), "[t]he applicable standard of fairness * * * is whether the defendant had an opportunity to refute the aggravating factors which might have negatively influenced the court" (*People v Redman*, 148 AD2d 966, *lv denied* 74 NY2d 745). Despite the victim's efforts, we find that her infancy combined with her inability to recall many events rendered her unable to fully express herself. Under these circumstances, we find no error in permitting the victim's parents to participate.

■ Nor do we find error in the imposition of consecutive sentences since the single act did not constitute two offenses, nor did it constitute one of the offenses and a material element of the other (*see, People v Laureano*, 87 NY2d 640, 643; *see also*, Penal Law § 70.25 [2]; *People v White*, 261 AD2d 653, *lv denied* 93 NY2d 1029). Instead, "the facts show that the acts underlying the crimes [of rape and sodomy] are separate and distinct" (*People v Starks*, 238 AD2d 621, 624, *lv denied* 91 NY2d 836). Inasmuch as the charge of attempted murder in the second degree was separate and distinct from the charge of kidnapping (*see, People v Hopkins*, 95 AD2d 870, *affd* 58 NY2d 1079), consecutive prison terms for these offenses were also appropriate.

Having reviewed and rejected the remaining contentions, we affirm the judgment of conviction.

CARDONA, P. J., SPAIN, CARPINELLO and GRAFFEO, JJ., concur.

Ordered that the judgment is affirmed.