■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NELSON RUGER, JR., Appellant. [718 NYS2d 732] —Spain, J. Appeal from a judgment of the County Court of Washington County (Hemmett, Jr., J.), rendered July 2, 1999, convicting defendant upon his plea of guilty of the crime of sodomy in the first degree.

Defendant was charged in a nine-count indictment with sodomy in the first degree (two counts), sodomy in the second degree (three counts), rape in the first degree, rape in the second degree, sexual abuse in the first degree and endangering the welfare of a child after having allegedly engaged in sexual acts with an 11-year-old girl. Following a *Huntley* hearing, defendant's suppression motion was denied and he thereafter entered an *Alford* plea of guilty to the crime of sodomy in the first degree in full satisfaction of the charges against him. He was then sentenced, in accordance with the plea agreement, to an indeterminate prison term of 7½ to 15 years. Defendant appeals and we affirm.

Initially, we reject defendant's contention that County Court erred in denying his motion to suppress incriminating statements made to State Police Investigator Guy Savio on October 24, 1998. It is well settled that " 'the voluntariness of a statement is generally "a question of fact to be determined from the totality of the circumstances" ' " (*People v White*, 261 AD2d 653, 654, *lv denied* 93 NY2d 1029, quoting *People v Miller*, 244 AD2d 828, quoting *Matter of James OO.*, 234 AD2d 822, 823, *lv denied* 89 NY2d 812). Moreover, "the factual findings of the suppression court are entitled to great weight and will not be set aside unless clearly erroneous" (*People v Gagliardi*, 232 AD2d 879, 880).

The *Huntley* hearing testimony demonstrates that on October 8, 1998, defendant accompanied Savio to the Granville State Police barracks for questioning in connection with allegations of sexual abuse made by the victim. After waiving his *Miranda* rights, defendant was questioned until he became visibly ill and, upon inquiry, advised Savio that he was a diabetic. Savio terminated the interview and summoned medical assistance for defendant. Approximately two weeks later, defendant contacted Savio to schedule a second interview and it was agreed that they would meet. That interview—to which defendant drove in his own vehicle—commenced at approximately 5:00 P.M. on October 24, 1998 at the Granville barracks where defendant was advised of his *Miranda* rights, indicated that he understood those rights and agreed to waive them. Savio testified that the atmosphere during the interview was "very quiet."

He further indicated that he and defendant had a "very relaxed conversation" inasmuch as he had been advised by defendant's physician following the previous interview that stress or excitement could adversely affect defendant's medical condition. According to Savio, defendant began to make incriminating statements at approximately 6:00 P.M. The statements were reduced to writing at 7:00 P.M., signed by defendant at 7:30 P.M. and he was thereafter placed under arrest. Savio further indicated that although he was aware that defendant had not taken his insulin that day, defendant showed no signs of illness similar to those he had exhibited during the previous interview nor did defendant ask for any medical assistance.

Based on the foregoing, we find no indication that defendant's diabetic condition and lack of insulin adversely affected his ability to knowingly and voluntarily waive his *Miranda* rights (*see, People v Kemp*, 266 AD2d 887, *lv denied* 94 NY2d 921; *People v May*, 263 AD2d 215, 219, *lv denied* 94 NY2d 950; *People v Wilson*, 100 AD2d 690, 691). We are similarly unpersuaded that the confession was a product of police domination or coercion. The fact that defendant had to ask permission to use the bathroom and to get a drink—which requests were granted—does not demonstrate that his statements were involuntary or that his will was overborne by "an atmosphere of police domination." Accordingly, based on the totality of the circumstances, including the short duration of the interview, we conclude that the People proved beyond a reasonable doubt that defendant's statements were voluntary (*see, People v Kemp, supra; People v White, supra*).

Defendant also contends that County Court lacked a sufficient factual basis to accept his *Alford* plea. We note that this claim has not been preserved for our review since defendant failed to move to vacate the judgment of conviction or to withdraw his guilty plea (*see, People v Walton*, 248 AD2d 803, *lv denied* 92 NY2d 908; *People v Martinez*, 243 AD2d 923). In any event, were we to reach the merits, we would find defendant's argument to be unavailing. For an *Alford* plea to be valid, the court must determine whether the plea " 'represents a voluntary and intelligent choice among the alternative courses of action open' " (*People v Di Paola*, 143 AD2d 487, 488, quoting *North Carolina v Alford*, 400 US 25, 31; *see, People v Martinez, supra*, at 924). The transcript of the plea proceedings indicates that County Court gave defendant a detailed explanation of the ramifications of pleading guilty, including the rights he would waive by doing so. Defendant indicated that he understood the court's admonitions, that he wished to

plead guilty to the top count of the indictment charging him with sodomy in the first degree in order to reduce his exposure to more convictions and more jail time and that he was not threatened or coerced into pleading guilty. Under these circumstances, we find no reason to vacate the plea in the interest of justice.

Crew III, J. P., Mugglin, Rose and Lahtinen, JJ., concur. Ordered that the judgment is affirmed.