■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARLON LEGERE, Appellant. [916 NYS2d 187]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Feldman, J.), rendered February 22, 2006, convicting him of murder in the first degree (two counts), robbery in the first degree, and criminal mischief in the fourth degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress statements made to law enforcement officials.

Ordered that the judgment is affirmed.

The charges against the defendant arise from a September 10, 2004 incident in which the defendant allegedly shot and killed two New York City Police Department detectives, Detective Robert Parker and Detective Patrick Rafferty. The defendant was convicted, upon a jury verdict, of murder in the first degree (two counts), robbery in the first degree, based on his stealing a car after the shootings, and criminal mischief in the fourth degree.

The evidence adduced at a pretrial Huntley hearing (see People v Huntley, 15 NY2d 72 [1965]) showed that the shootings occurred at approximately 10:00 P.M. The defendant was ap-

prehended shortly thereafter, and he was taken to a hospital at approximately 10:30 P.M. At the hospital, the defendant was treated for, inter alia, a gunshot wound to the foot or ankle.

The hearing testimony showed that while the defendant was in police custody at the hospital over the course of the next 36 hours, he made several statements to law enforcement officials. The defendant was interviewed by two detectives at 12:05 A.M. on September 11, 2004, approximately 1½ hours after he arrived at the hospital. One of the detectives read the *Miranda* warnings (*see Miranda v Arizona*, 384 US 436 [1966]) to the defendant prior to that interview. According to the hearing testimony, the defendant indicated that he understood those rights and that he was willing to speak to the police.

At approximately 3:20 A.M., the defendant made a statement to another police officer. That statement was ruled admissible by the Supreme Court, but the People did not elicit evidence at trial as to that statement.

At 3:30 A.M., another detective interviewed the defendant. The detective who conducted that interview, Maureen Dunne, asked the defendant whether he "remembered" having been read the *Miranda* warnings and offered to re-read those warnings. According to Detective Dunne, the defendant indicated that he "remembered" the warnings, including the right to remain silent, that he did not wish to have the warnings re-read, and that he was willing to speak to the police.

At approximately 4:43 A.M., an assistant district attorney attempted to interview the defendant. That conversation was videotaped. The assistant district attorney read the *Miranda* warnings to the defendant, and asked the defendant whether he wished to speak about the incident. The defendant said, "I just want to speak to my mother, that's it." When asked again whether he wished to speak to the assistant district attorney, the defendant replied, "no," and stated, "I'm not feeling too good."

Approximately 15 hours later, at 7:35 P.M. on the evening of September 11, 2004, two detectives again interviewed the defendant. According to the hearing testimony, one of those detectives asked the defendant whether he remembered the *Miranda* rights, told him that "his rights still applie[d]," and asked the defendant whether he would like to hear the rights read again. The defendant indicated that he did not. The defendant indicated that he wished to speak, and made another statement.

At 10:45 A.M. on the following morning, September 12, 2004, a detective "advised [the defendant] that his rights still applied." According to the detective, the defendant indicated that he

understood those rights. The defendant then made another statement to the police.

The defendant contends that the Supreme Court erred in denying that branch of his omnibus motion which sought suppression of the 12:05 A.M., 3:30 A.M., and 7:35 P.M. statements that he made to the police. However, with respect to the 12:05 A.M. and 3:30 A.M. statements, the hearing evidence demonstrated that the defendant's medical condition did not prevent him from making a voluntary and knowing waiver of his rights. "While statements and admissions are properly suppressed as involuntary where an individual is impaired by a physical condition to the extent of undermining his ability to make a choice whether or not to make a statement, voluntariness is a question of fact to be determined from the totality of the circumstances" (*People v Hughes*, 280 AD2d 694, 695 [2001] [internal quotation marks and citations omitted]; *see People v May*, 263 AD2d 215, 219 [2000]). Here, the hearing evidence supports the Supreme Court's determination that the defendant was capable of knowingly and voluntarily making a statement at the time of the 12:05 A.M. statement and the 3:30 A.M. statement (*see People v Braithwaite*, 286 AD2d 507 [2001]; *People v Pearce*, 283 AD2d 1007 [2001]; *People v Rodriguez*, 231 AD2d 650, 651 [1996]; *People v Harrington*, 163 AD2d 327, 327-328 [1990]).

Further, the 3:30 A.M. statement was made approximately 3½ hours after the first statement, and the defendant remained in police custody during that time. "[W]here a person in police custody has been issued *Miranda* warnings and voluntarily and intelligently waives those rights, it is not necessary to repeat the warnings prior to subsequent questioning within a reasonable time thereafter, so long as the custody has remained continuous" (*People v Holland*, 268 AD2d 536, 537 [2000] [internal quotation marks omitted]; *see People v Thomas*, 233 AD2d 347 [1996]). Here, the police were not required to readminister the *Miranda* warnings prior to the 3:30 A.M. statement, as the defendant remained in continuous police custody after the 12:05 A.M. statement, and the 3:30 A.M. statement was made within a reasonable time after that statement.

The defendant also contends that the Supreme Court erred in ruling admissible the statement that he made at 7:35 P.M. on September 11, as the hearing evidence showed that he had invoked the right to remain silent prior to that time. "[T]he [*Miranda*] rule being designed to counteract the coercive pressure of the custodial setting, a suspect's right to remain silent, once invoked, must be scrupulously honored. [The suspect] may not within a short period thereafter and without a fresh set of

warnings be importuned to speak about the same suspected crime" (*People v Ferro*, 63 NY2d 316, 322 [1984] [internal quotation marks and citations omitted], *cert denied* 472 US 1007 [1985]). Here, the defendant invoked the right to remain silent in his videotaped interview with the assistant district attorney, at approximately 4:43 A.M. on September 11. The 7:35 P.M. statement was made approximately 15 hours after that time. As the Supreme Court found, there was a pronounced break in time between those two statements.

However, it is undisputed that the police did not readminister the *Miranda* warnings to the defendant prior to the 7:35 P.M. statement. In addition, the *Miranda* warnings were not readministered prior to the statement made by the defendant to the police at 10:45 A.M. on September 12. Under these circumstances, the 7:35 P.M. statement and the 10:45 A.M. statement should have been suppressed (*see People v Reid*, 34 AD3d 1273, 1273 [2006]; *People v Douglas*, 8 AD3d 980, 980-981 [2004]; *People v Brown*, 266 AD2d 838, 838 [1999]; *see also People v Rifkin*, 289 AD2d 262, 263 [2001]). Nevertheless, the error in this regard was harmless, as there was overwhelming evidence of the defendant's guilt, and no reasonable possibility that the error contributed to his conviction (*see People v Crimmins*, 36 NY2d 230, 237 [1975]; *People v Reid*, 34 AD3d at 1273; *see also People v Graham*, 48 AD3d 265, 266 [2008]).

The defendant correctly contends that the Supreme Court should have granted his request to admit into evidence testimony as to a statement that he made to a police officer at the hospital at 3:20 A.M. on September 11, 2004. However, any error in this regard was harmless, as there was overwhelming evidence of the defendant's guilt and there was no significant probability that the ruling contributed to his conviction (*see People v Crimmins*, 36 NY2d at 237; *see also People v Green*, 74 AD3d 1899, 1901 [2010]).

Under the circumstances herein, there is no merit to the defendant's contention that the Supreme Court erred in denying his request to close the courtroom during a pretrial hearing at which the 911 emergency tape was played (*see Matter of Associated Press v Bell*, 70 NY2d 32, 37-38 [1987]; *see also Matter of Gannett Westchester Rockland Newspapers v LaCava*, 158 AD2d 495, 496-497 [1990]).

The Supreme Court did not err in admitting into evidence at trial the tape of a 911 emergency call made by one of the victims, Detective Parker, as well as testimony as to statements made by Detective Parker to another police officer at the scene. As the Supreme Court found, under the circumstances of the case, that

evidence fell within the "dying declaration" hearsay exception (*People v Nieves*, 67 NY2d 125, 132 [1986]; *see People v McCrae*, 69 AD3d 759, 761 [2010]; *People v Riolo*, 292 AD2d 548 [2002]), as well as within the "excited utterance" hearsay exception (*People v Edwards*, 47 NY2d 493, 497 [1979]; *People v Marino*, 21 AD3d 430, 431 [2005], *cert denied* 548 US 908 [2006]).

Further, the introduction of the 911 call and the testimony as to Detective Parker's statements did not violate the Confrontation Clause. "[T]he Confrontation Clause generally prohibits the use of 'testimonial' hearsay against a defendant in a criminal case, even if the hearsay is reliable, unless the defendant has a chance to cross-examine the out-of-court declarant" (*People v Goldstein*, 6 NY3d 119, 127 [2005], *cert denied* 547 US 1159 [2006], citing *Crawford v Washington*, 541 US 36 [2004]). However, a statement that is made with the "primary purpose" of obtaining emergency assistance or preventing further harm is nontestimonial in nature (*People v Nieves-Andino*, 9 NY3d 12, 15 [2007] [internal quotation marks omitted]). Here, the evidence shows that in making the 911 call and in making statements to another officer, Detective Parker's primary purpose was to obtain emergency aid for himself and for Detective Rafferty, and to prevent further harm by the perpetrator, who at that point was still at large and armed. Under these circumstances, the 911 call and testimony as to Detective Parker's statements to another police officer were nontestimonial in nature. Consequently, the introduction of that evidence did not violate the defendant's right to confront witnesses (*see People v Nieves-Andino*, 9 NY3d at 16; *People v Bradley*, 8 NY3d 124, 125-128 [2006]; *People v Rodriguez*, 47 AD3d 406, 407-408 [2008]; *People v Gantt*, 48 AD3d 59, 70-71 [2007]).

The defendant also objects to the testimony as to the recovery of his photograph from a police vehicle on the grounds that this testimony impermissibly implied that he had a prior criminal record. The defendant failed to preserve this contention for appellate review (*see People v Barcliff*, 178 AD2d 285 [1991]; *People v Vargas*, 140 AD2d 472 [1988]). In any event, any error in this regard was harmless, as there was overwhelming evidence of the defendant's guilt and no significant probability that the admission of that evidence contributed to the defendant's conviction (*see People v Crimmins*, 36 NY2d at 237). Furthermore, contrary to the defendant's contention, the Supreme Court did not improperly curtail the cross-examination of certain trial witnesses, particularly as the proposed questions concerned collateral and only marginally relevant issues (*see People v Francisco*, 44 AD3d 870, 870 [2007]; *People v Mc-*

*Glothin*, 6 AD3d 462, 463 [2004]; *People v Barney*, 277 AD2d 460 [2000]). Likewise, the Supreme Court did not err in denying the defendant's application to admit into evidence a videotape showing his transfer from the hospital to the police precinct. That videotape had minimal probative value and it was cumulative of other evidence that was admitted at trial (*see People v Petty*, 7 NY3d 277, 286 [2006]; *People v Bostic*, 48 AD3d 696 [2008]; *People v Townsend*, 44 AD3d 970 [2007]).

The defendant failed to preserve for appellate review his contention that the Supreme Court erred in closing the courtroom for the trial testimony of an undercover police officer, as he voiced only a general objection and did not request a *Hinton* hearing as to this matter (*see People v Hinton*, 31 NY2d 71 [1972], *cert denied* 410 US 911 [1973]). In addition, he did not challenge the prosecutor's claims that the officer's safety could be jeopardized by testifying in open court (*see People v Sanchez*, 7 AD3d 645, 646 [2004]; *People v Latta*, 222 AD2d 303 [1995]). In any event, under the circumstances of this case, the Supreme Court did not improvidently exercise its discretion in closing the courtroom for the testimony of the undercover officer (*see People v Gonzalez*, 43 AD3d 827, 827 [2007]; *People v Mendez*, 5 AD3d 400 [2004]; *People v Foxworth*, 305 AD2d 424, 425 [2003]; *People v Martinez*, 289 AD2d 259 [2001]; *People v Reddi*, 266 AD2d 406, 407 [1999]). Dillon, J.P., Balkin, Belen and Austin, JJ., concur.