THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMAR HOLDEN, Appellant. [918 NYS2d 773]—

"Evidence of a defendant's prior bad acts may be admissible when it is relevant to a material issue in the case other than defendant's criminal propensity" (*People v Dorm*, 12 NY3d 16, 19 [2009]; *see People v Alvino*, 71 NY2d 233, 241 [1987]). Such evidence may be used where relevant, among other things, to prove motive or identity (*see People v Dorm*, 12 NY3d at 19; *People v Molineux*, 168 NY 264 [1901]). Additionally, such evidence may be allowed when it is needed as background material or to complete the narrative of the episode (*see People v Tosca*, 98 NY2d 660, 661 [2002]; *People v Till*, 87 NY2d 835, 837 [1995]). "Where there is a proper nonpropensity purpose, the decision whether to admit evidence of defendant's prior bad acts rests

upon the trial court's discretionary balancing of probative value and unfair prejudice" (*People v Dorm*, 12 NY3d at 19; *see People v Ventimiglia*, 52 NY2d 350, 359-360 [1981]; *People v Santarelli*, 49 NY2d 241, 250 [1980]; *People v Allweiss*, 48 NY2d 40, 47 [1979]). The evidence will be allowed if its probative value exceeds the potential for prejudice to the defendant (*see People v Cook*, 93 NY2d 840, 841 [1999]; *People v Alvino*, 71 NY2d at 242).

The Supreme Court providently exercised its discretion in determining that the probative value of the evidence in question outweighed the risk of prejudice to the defendant. Since there was no witness to the actual shooting, the evidence was admissible to establish identity (*see People v Basir*, 179 AD2d 662, 664 [1992]). The evidence also was admissible as probative of the defendant's motive, to provide necessary background information on the nature of the relationship between the defendant and the victim, and between the defendant and the key prosecution witness, the defendant's ex-girlfriend, and to place the charged conduct in context (*see People v Dorm*, 12 NY3d at 19; *People v Williams*, 27 AD3d 673 [2006]; *People v Cain*, 16 AD3d 431, 432 [2005]; *People v Newby*, 291 AD2d 460 [2002]; *People v Band*, 125 AD2d 683, 686 [1986]). In addition, the Supreme Court's limiting instruction to the jury served to alleviate any prejudice resulting from the admission of the evidence (*see People v Ramirez*, 23 AD3d 500, 501 [2005]; *People v Newby*, 291 AD2d at 461; *People v Muniz*, 248 AD2d 644, 645 [1998]).

Likewise, the Supreme Court providently exercised its discretion in determining, in effect, that the victim's statement naming the defendant as the shooter was admissible as an excited utterance. The statement was made moments after the victim, who later died of his wounds, had been shot twice, when he was bleeding profusely, calling for help, flailing his arms, and saying "please don't let me die." Under these circumstances, the statement was clearly " 'the product of the declarant's exposure to a startling or upsetting event that [was] sufficiently powerful to render the observer's normal reflective processes inoperative' preventing the opportunity for deliberation and fabrication" (*People v Carroll*, 95 NY2d 375, 385 [2000], quoting *People v Vasquez*, 88 NY2d 561, 574 [1996]; *see People v Legere*, 81 AD3d 746 [2d Dept 2011]; *People v Marajdeen*, 47 AD3d 949 [2008]; *People v Hasan*, 17 AD3d 482 [2005]; *People v Corker*, 309 AD2d 816, 817 [2003]; *People v West*, 265 AD2d 354 [1999]). That the utterance was in response to an inquiry is "merely one factor bearing on spontaneity within the meaning of the excited utter-

ance rule" (*People v Brown*, 70 NY2d 513, 519 [1987] [internal quotation marks and citation omitted]) and, under the circumstances, did not affect the statement's admissibility (*cf. People v Johnson*, 1 NY3d 302, 307 [2003]).

The contentions raised in the defendant's pro se supplemental brief are without merit. Rivera, J.P., Dickerson, Eng and Lott, JJ., concur.